STATE OF MAINE
WASHINGTON, ss

SUPERIOR COURT
Civil Action
Docket No. WASSC-RE-2021-00007

ROGER W. MATHEWS JR. as Trustee and
Beneficiary of the MATHEWS FAMILY
ROUND POND REVOCABLE TRUST,

      Plaintiff / Counterclaim
      Defendant

and ELAINE WOOD et al.,

      Plaintiffs

v.

JENNI L. FARLEY,

      Defendant / Counterclaim
      Plaintiff / Crossclaim Plaintiff

ROGER W. MATHEWS III,

      Defendant / Crossclaim
      Defendant

**ORDER ON CROSS MOTIONS FOR
SUMMARY JUDGMENT**

## Introduction

    This case arises out of the conveyance of a camp from one spouse to another incident to a divorce judgment entered in the Superior Court of the State of New Jersey. The camp structure was built on real estate owned by a trust, the beneficiaries of which are members of a family that includes the conveying spouse but not the receiving spouse. Further complicating the transaction, the conveyance was not to the receiving spouse herself but to a trust in her name; the conveyance was explicitly for the benefit of the divorcing parties' children; and, as noted, the conveyance was considered and approved by a court of competent jurisdiction in another state.



In this order, the court will identify all parties to the action and their relations to one another, then outline the claims pending and describe the motions for summary judgment by which each party seeks relief. Finally, the court will analyze the motions and rule on them.

## Parties and Claims

Because the disputes in this case involve property owned by members of the Mathews family, many of whom bear that surname, the court will refer to each by first name after this initial identification. The plaintiffs are Roger W. Mathews, Jr. (Bill), as Trustee and Beneficiary of the Mathews Family Round Pond Revocable Trust-2009 (The Round Pond Trust), along with his co-beneficiaries and family members Everett Mathews, Jr., Elaine Wood, Deborah Poirier, Christa Mathews Clarson, Carey Beal, and Catherine Kershner. The defendants are Jenni L. Farley, individually and as Trustee of the Jenni Farley 2015 Revocable Living Trust (Farley Trust), and Roger Mathews, III (Roger). Roger is also a Mathews family member, co-trustee, and beneficiary of the Round Pond Trust. Jenni is his ex-wife.

The plaintiffs' complaint is set forth in two counts. Count I seeks a declaratory judgment concerning the rights of the parties in the real estate and camp. Count II seeks injunctive relief to reflect the rights established in Count I. Jenni responded to the complaint with a counterclaim in three counts. In Counts I and II, she seeks relief from Bill for alleged violation of fiduciary duty and breach of contract. In Count III, she advances a claim for unjust enrichment against Bill, Everett, Elaine, Deborah, Christa, Carey, and Catherine. Jenni also filed a crossclaim against Roger in three counts: Count I for breach of fiduciary duty, Count II for breach of contract and specific performance, and Count III for unjust enrichment.

Jenni filed the first motion for summary judgment, comprising a defensive request for judgment on all counts of Plaintiffs' complaint and an offensive request for summary judgment as to counts I and II of her counterclaim against Bill and counts I and II of her crossclaim against Roger.

2

All the plaintiffs then filed cross-motions for judgment against her. In their motion, Plaintiffs seek summary judgment on the entirety of their two-count complaint against Jenni and Roger[1] and on Jenni's counterclaim against Bill.

The parties agree the facts are not in dispute. They all asked that the issues presented be decided by the Court's interpretation of the underlying agreements and trust documents along with the judgments entered in the Superior Court of New Jersey on August 29, 2019, and December 4, 2020. After it reviewed the parties' motions, arguments, and supporting documents, the Court became concerned that the issue of Constitutional Full Faith and Credit of the orders in New Jersey had not been adequately explored. It therefore solicited further memoranda on that issue, to which all parties responded. The record being thus completed, and no party having specifically requested oral argument, the Court will decide the motions pursuant to M.R. Civ. P. 7(b)(7).

## I. **STANDARD OF REVIEW**

Summary judgment is appropriate only when a moving party has shown no genuine dispute exists concerning material facts and that it is entitled to judgment as a matter of law. M.R. Civ. P. 56(c). A fact is "material" when it has the potential to affect the outcome of the case. *Lougee Conservancy v. City Mortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.3d 774. A "genuine issue of material fact exists when a fact-finder must choose between competing versions of the truth." *Holmes v. E. Me. Med. Ctr.*, 2019 ME 84, ¶ 15, 208 A.3d 792. The facts in the summary judgment record are limited to those facts which are properly set forth in the parties' respective statements[2] of fact. *See e.g., Pushard v. Riverview Psychiatric Ctr.*, 2020 ME 23, ¶ 4 n.2, 224 A.3d 1239; *Berry v. MaineStream Fin.*, 2019 ME 27, ¶ 7, 202

---

[1] Count II of Plaintiffs' complaint does not advance a claim against Roger.

[2] These 'statements of fact' may include and are limited to the following documents: a supporting statement of material facts (S.M.F.) filed by the moving party, the nonmoving party's opposition to the moving party's statement of material facts (Opp. S.M.F.), the nonmoving party's statement of additional facts (S.A.F.) in opposition, and the moving party's reply to the nonmoving party's S.A.F. M.R. Civ. P. 56(h).

A.3d 1195; *Holmes v. E. Me. Med. Ctr.*, 2019 ME 84, ¶ 14, 208 A.3d 792; M.R. Civ. P. 56(c), (h). The Court considers those facts in the light most favorable to the non-moving party. *Cormier v. Genesis Healthcare LLC*, 2015 ME 161, ¶ 7, 129 A.3d 944; *Jenness v. Nickerson*, 637 A.2d 1152, 1154 (Me. 1994) ("[T]he party seeking the summary judgment has the burden of demonstrating clearly that there is no genuine issue of fact. Any doubt on this score will be resolved against him and the opposing party will be given the benefit of any inferences which might reasonably be drawn from the evidence.") (quoting 2 Field, McKusick & Wroth, *Maine Civil Practice* § 56.4 at 39 (2d ed. 1970)).

Where it is the plaintiff (i.e., the party who bears the ultimate burden of persuasion on the claim or defense at issue) who has moved for summary judgment, the plaintiff bears the burden of demonstrating "that each element of its claim is established without dispute as to material fact within the summary judgment record." *N. Star Capital Acquisition, LLC v. Victor*, 2009 ME 129, ¶ 8, 984 A.2d 1278; *see also Cach, LLC v. Kulas*, 2011 ME 70, ¶¶ 8-9, 21 A.3d 1015. If the plaintiff satisfies this burden, the defendant can avoid summary judgment only by demonstrating that a genuine, material, factual dispute exists for trial. M.R. Civ. P. 56(e); *Kulas*, 2011 ME 70, ¶¶ 8-9, 21 A.3d 1015. Where the moving party is the defendant (i.e., the party who does not bear the ultimate burden of persuasion on the claim or defense at issue), "the burden rests on that party to show that the evidence fails to establish a prima facie case for each element of the cause of action." *Holmes*, 2019 ME 84, ¶ 16, 208 A.3d 792. "If the defendant succeeds, it then becomes the plaintiff's burden to make out a prima facie case and demonstrate that there are disputed facts." *Id.* "Cross-motions for summary judgment do not alter the basic Rule 56 standard." *Osprey Landing, LLC v. First Am. Title Ins. Co.*, 2017 ME 46, ¶ 7, 157 A.3d 247.

## II.  FACTUAL RECORD

The following narrative relates the facts which the parties established with adequate record references in their Rule 56(h) statements of fact.[3]  The Court does not consider any elements of the parties' statements that assert legal conclusions, factual conclusions, legal argument, characterizations of the evidentiary materials, or statements purporting to describe the substance or interpret the contents of documentary evidence. *See Estate of Barron v. Shapiro & Morley, LLC*, 2017 ME 51, ¶ 11 n.4, 157 A.3d 769; *First Tracks Invs., LLC v. Murray, Plumb & Murray*, 2015 ME 104, ¶ 2, 121 A.3d 1279; *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 8 n.6, 770 A.2d 653; *Orient v. Dwyer*, 490 A.2d 660, 662 (Me. 1985).

In 2009, Everett established the Round Pond Trust with himself and Bill as trustees and Roger as one of the beneficiaries. (Farley S.M.F. ¶¶ 1-2, 12.)  The donors of the Round Pond Trust included Everett E. Mathews Sr. (Plaintiffs' S.M.F. ¶ 3).  The elder Everett Mathews died in 2011 (Farley S.M.F. ¶ 3) after which, in 2013, Bill appointed Roger as co-trustee.  (*Id.* ¶ 5.)  The Round Pond Trust holds title to certain property located at Round Pond in Steuben, Maine.  It includes the following terms:

- "Each beneficiary shall be entitled to construct a 'camp' at an area designated by the Trustee. The beneficiary shall be the sole owner of the camp and shall be responsible for all costs, maintenance and taxes associated with the camp. . ."

- A section titled "Transfer of Ownership," which has terms stating: "The beneficiaries shall be entitled during their lifetime or will to transfer his or her beneficiary ownership in the trust,

---

[3] Statements of fact abound. Jenni has filed a S.M.F., an opposing statement to Plaintiffs' S.M.F., a reply to Roger's S.A.F., and a reply to Plaintiffs' objections to her S.M.F.  Plaintiffs have filed a S.M.F., an opposing statement to Jenni's S.M.F., and a reply to Roger's S.A.F.  Roger has filed an opposing statement to both Jenni's and Plaintiffs' S.M.F.'s and a S.A.F.  Because the pending matters are cross-motions for summary judgment concerning the same issues, the Court also considers both Jenni's and Plaintiffs' S.M.F's as, effectively, S.A.F.'s responding to each other's opposing motions.

provided, however, that said interest may only be transferred to a lineal descendant by blood or adoption."

- A section titled "Minor Beneficiaries," which has terms stating: "If any beneficiary of this trust is under 18 years of age, then the parent(s) or legal guardian of said minor shall receive all notices and shall be responsible for all obligations of said ownership and shall enjoy any benefits of the trust in the name of the beneficiary."

- "If any of the original trustees named herein shall die or cease to act in his or her capacity then the remaining Trustee shall have the right to appoint a Trustee to serve jointly with him."

- "The terms and conditions of this Trust is [sic] revocable and may be altered and amended and/or terminated upon the written consent of the holders of Ninety (90%) percent of the beneficial ownership of the trust. Donors retain the right to alter or amend or terminate this trust. At the death of the first Donor the surviving Donor shall have no rights to revoke or amend this Trust."

- "In the event the Trust includes certain real property at Round Pond, Steuben, Maine, Trustees are specifically instructed that the principal objective and purpose of this trust is the preservation, retention and access to said real property for the benefit of Donor's children and their families."

- "The beneficiaries shall be entitled during their lifetime or by will to transfer his or her beneficial ownership in the trust, provided, however, that said interest may only be transferred to a lineal descendant by blood or adoption. Transfer shall be completed upon signing and delivering a written transfer of ownership to the Trustees. Any attempt to transfer the property to a non-lineal descendant shall be null and void and shall not be of any force and effect."

(Farley S.M.F. ¶¶ 9-11; Plaintiffs' S.M.F. ¶¶ 7, 13-15). The persons listed as beneficiaries of the Round Pond Trust on the trust document are set forth below along with each person's listed proportional interest:

| | |
|---|---|
| Everett Mathews Jr | 3/18th |
| Elaine Wood | 1/9th |
| Deborah Poirier | 3/18th |
| Christa Mathews Clarkson | 1/9th |
| Roger W. Mathews III | 1/9th |
| Carey Beal | 1/9th |
| Catherine Kershner | 1/9th |
| Roger W. Mathews Jr. | 1/9th |

(Plaintiffs' S.M.F. ¶ 10.)

Jenni and Roger were married on October 10, 2015, in New Jersey. (Farley S.M.F. ¶ 15.) Before marrying, Jenni and Roger entered into a prenuptial agreement dated September 30, 2015. (*Id.* ¶ 14.) Article 8(c) of the prenuptial agreement states as follows:

> C. Additionally, [Roger W. Mathews III] is a beneficiary and the Trustee of the Mathews Family Round Pond Revocable Trust – 2009. *See Exhibit W.* [Roger W. Mathews III's] interest in this Trust is premarital and is considered a separate asset. The Terms and Conditions of said Trust speak for themselves [sic] however, the parties acknowledge that the provisions of the Trust only permit any transfer to a lineal descendant and any other transfer shall be null and void. It is the Parties **[sic?]** intent that JENNI shall build a home on the property. This home is included in the Jenny [sic] Farley 2015 Revocable Living Trust and is subject to those terms and provisions which consider that home an asset of the parties [sic] child/ren as any child/ren are considered a lineal descendant.

(Plaintiffs' S.M.F. ¶ 18.) A copy of the Round Pond Trust document is attached to Jenni and Roger's prenuptial agreement. (*Id.* ¶ 19.) As contemplated by the agreement, Jenni built a house on the Round Pond Property during the marriage, which the parties refer to as "the Steuben Camp" and which has since been used by Jenni and the couple's minor children, Meilani and Greyson Mathews. (*Id.* ¶ 22; Farley's S.M.F. ¶ 18.) The prenuptial agreement contains additional terms as follows:

- Regarding the house Jenni was to build on the Round Pond Property: "This home is included in the Jenny [sic] Farley 2015 Revocable Living Trust and is subject to those terms and provisions which consider that home an asset of the parties' children as any children are considered a lineal descendant."

- "The terms and conditions of both the Jenni Farley 2015 Revocable Living Trust and the Mathews Family Round Pond Revocable Trust shall not be modified in any way by this Agreement."

- "The parties further agree that the monetary wedding gifts shall be utilized to construct the garage for the anticipated Maine residence that is subject to the Mathews Family Round Pond Revocable Trust – 2009."

(Plaintiffs' S.M.F. ¶¶ 23-25; Farley's Reply to Plaintiffs' S.M.F. ¶ 23.) Jenni is the trustee of the Farley Trust. (Farley's S.M.F. ¶ 19.) The current beneficiaries of the Farley Trust are Jenni and Roger's minor children, Meilani Mathews, and Greyson Mathews (Farley's S.M.F. ¶ 20.)

Jenni and Roger encountered irreconcilable difficulties, which resulted in their entering a marital settlement agreement on July 18, 2019. (Farley's S.M.F. ¶¶ 15-16.) The marital settlement agreement incorporated the terms of the prenuptial agreement. (Farley's S.M.F. ¶ 16.) It also included the following term:

> The parties have real estate located at 263 Round Pond Road in Steuben Maine. The land is owned by Husband through his Trust, which value is nominal. The home on the land is owned by Wife through her trust as confirmed by the parties' September 20, 2015, Prenuptial Agreement. . . The parties acknowledge that the land and the property are controlled by the parties' respective Trusts and that the intention is to preserve same for the benefit of the children.

(Plaintiffs' S.M.F. ¶ 34.) After reaching their agreement, the parties divorced. The terms of their marital settlement agreement were incorporated into a divorce judgment issued by the New Jersey Superior Court on August 29, 2019. (Farley's S.M.F. ¶ 17.)

On December 4, 2020, the New Jersey Superior Court entered a further order in which it recognized its own jurisdiction to affect Jenni and Roger's property rights in the State of Maine. (Farley's S.M.F. ¶ 23) (quoting language from the order of the New Jersey Superior Court). The New Jersey court then found that "the parties' [marital settlement agreement] does not authorize [Roger] to enter the [Steuben Camp] without [Jenni's] permission" and ordered that "[a]ny unlicensed entry will constitute a violation of the Final Judgment of Divorce." (*Id.* ¶¶ 23-24.) It further ordered that Jenni be granted sole use and possession of the Steuben Camp without the interference of Roger or his agents. (*Id.* ¶ 25; Plaintiffs' Opp. S.M.F. 25.)

On April 30, 2021, Jenni filed an action seeking to register the August 29, 2019, New Jersey divorce judgment and December 4, 2020, order in Maine. (Farley's S.M.F. ¶ 21); *Farley v. Mathews*, MACSC-CV-2021-0008, 2022 Me. Super. LEXIS 20 (Jun. 27, 2022). Roger objected to registration of the divorce judgment and order on the grounds that they:

> unlawfully infringe upon the property rights of a non-party, independent entity that owns the Maine property identified by the New Jersey Court, over which the New Jersey Court had no jurisdiction. New Jersey orders violate the U.S. and Maine constitutions. Further, 19 M.R.S. §§ 1765, 3201 only permit the registration/enforcement of foreign judgments relating to child custody, and financial support.

(Farley's S.M.F. ¶ 22); *Farley*, 2022 Me. Super. LEXIS at *1-3. Roger also objected on the ground that the Maine Superior Court lacks personal jurisdiction over him. *Farley*, 2022 Me. Super. LEXIS at *3-4. The Maine Superior Court (*Mallonee, J.*) rejected Roger's objections. By order dated June 27, 2022, it accepted the New Jersey divorce judgment and later order for registration in Maine. *Farley*, 2022 Me. Super. LEXIS 20 at *5.

In addition to the parties' factual assertions concerning the registration case, this Court has decided to take judicial notice of those proceedings to the extent they provide relevant facts regarding the authenticity and validity of the New Jersey orders and any other fact relevant to the application of the Full Faith and Credit Clause of the United States Constitution, art. 4, § 1 to the case at bar. Any

such facts are not subject to reasonable dispute and can be readily and accurately determined from the Court's own records. *See* M.R. Evid. 201. If a party objects to the Court taking judicial notice of the above, the party may submit a "timely request" to be heard on the issue. M.R. Evid. 201(e). The Court does not expect objections to its taking judicial notice of the registration case as facts pertaining to the registration case already appear in the party's motion filings, some of the parties participated directly in that registration proceeding, and that case was before this very same Court and may be found in the Court's own docket.

## A. Roger's S.A.F. in Response to Jenni and Plaintiffs' Respective Motions for Summary Judgment

Roger's statement of additional facts, filed in opposition to both Jenni and Plaintiffs' cross-motions and the other parties' reply statements, sets forth the following:

- In the context of his prenuptial agreement with Jenni, and for Round Pond Trust administration purposes, Roger understood his children with Jenni were his lineal descendants.

- Paragraph 16 of the parties' marital settlement agreement includes the following terms:

> "Husband has a Trust known as the Mathews Family Round Pond Revocable Trust. Wife has two (2) Trusts known as the Jenni Farley 2015 Revocable Living trust and the Jenni Farley 2015 Irrevocable Life Insurance Trust. Except as otherwise provided herein, each Trust along with all interests contained therein shall be retained by the named party per the terms of the Prenuptial Agreement free and clear of any interest or claim the other party both now and forever unless they continue to be named as Trustee (in a fiduciary capacity) under the terms of the agreement by consent of the other party. These Trusts and the property, income, assets etc. are covered by a 2015 Prenuptial Agreement entered into between the parties in advance of their wedding and it is the intention of the parties at this time to continue to deem the assets, income and property therein the sole and exclusive ownership of the specifically named party in the title of the Trust or those that they designate. The parties shall determine if these trusts or any property, assets, or other interests related to the trusts should flow to a special needs trust going forward and if appropriate, should effectuate the same within the next 45 days."

- Roger testified at his deposition that he understands that the New Jersey Superior Court's orders relating to the divorce are valid, binding upon him, and enforceable in New Jersey.

- Roger testified at his deposition that he believes neither he nor Jenni intended in their marital and divorce agreements that the property owned by the Round Pond Trust was for Jenni. It was instead intended for their children.

- Jenni has filed motions in New Jersey seeking the same relief she seeks in this action, including but not limited to findings that Roger has breached or violated the parties' marital settlement agreement or divorce judgment.

- In an order dated January 21, 2022, entered in docket number FM-15-292-19N, the New Jersey Superior Court denied Jenni's request for sanctions against Roger arising out of his actions following entry of the order on December 4, 2020. In its denial, the court stated the following:

  > "The Court does not find that the filing of Defendant's objection to the registration of the Orders, or any of the actions taken regarding the litigations in Maine, hinders Plaintiff's access to the Maine house. Indeed, Plaintiff has not made any showing or allegation that she attempted to access the Maine house and was denied access. Currently, the Maine motions are pending. There has been no finding by a court in Maine that Plaintiff cannot use or possess the Maine house in contradiction to the court's December 4, 2020, Order[.]"

- In a further order dated February 1, 2022, the New Jersey Superior Court made specific findings that Roger had taken no actions to hinder Jenni's access to the house in Maine.

- Before Plaintiffs filed their motion for summary judgment, Roger was unaware of anyone trying to prevent Jenni from entering the house on Round Pond Trust property.

(Mathews III's S.A.F. ¶¶ 1-8; Farley's Reply to Mathews III's S.A.F. ¶¶ 1-8; Plaintiffs' Reply to Mathews III's S.A.F. ¶¶ 1-8.)

## III.   ANALYSIS

### A. Jenni Farley's Motion for Summary Judgment on Count I (Declaratory Judgment) and Count II (permanent injunction) of Plaintiffs' Complaint

Count I of Plaintiffs' complaint seeks a declaratory judgment that "neither Jenni L. Farley nor the Jenni Farley 2015 Revocable Living Trust possess any ownership interest in the Round Pond Property" and related declaratory[4] and injunctive relief. Count II requests that the Court permanently enjoin Farley from "entering the [Round Pond Property]" on the grounds that Jenni has no rights to that property. In seeking summary judgment in her favor on both count I and count II, Jenni argues that her children have gained rights to the property by operation of the prenuptial agreement, the Round Pond Trust, and the divorce orders in New Jersey. As a result, she as the children's legal guardian has derivative rights to use and enjoy the property. Plaintiffs argue that there was never a transfer of Roger's beneficiary interest to Jenni and Roger's children because the marital settlement agreement incorporated into the New Jersey divorce judgment transferred the beneficiary interest to the Farley Trust and was therefore ineffective because the trust is not a lineal descendant under the Round Pond Trust.

---

[4] Plaintiffs' complaint also requests the Court do the following things:

A. . . .

B. Declare that the Steuben Camp set aside to Jenni L. Farley or the Jenni Farley 2015 Revocable Living Trust by virtue of the 2015 Prenuptial Agreement and August 29, 2019 Divorce Judgment is subject to the terms of the Mathews Family Trust.

C. Order that Jenni L. Farley and the Jenni Farley 2015 Revocable Living Trust off the home to the Mathews Family Trust pursuant to the terms of that Trust;

D. If the Mathews Family Trust does not wish to purchase the home at an agreed upon price. Defendant Farley must remove the home from the Mathews Family Trust property within 6 months of judgment in this matter.

E. If the Steuben Camp is not removed within the time set forth in the Court's Orde, declare that the building becomes the property of the Mathews Family Trust as a permanent fixture on the land;

F. Order Roger W. Mathews III to undertake no actions inconsistent with this Order; and

G. Award costs to the Trust Plaintiffs, and such other further relief as this Court deems just and proper.

(Plaintiffs' Compl. ¶ 54 on pg. 8.)

Before addressing this and the parties' other arguments, the Court must answer the threshold question of whether, as Jenni argues, the Full and Faith Credit Clause, U.S. Const. art. 4, § 1, requires this Court to honor the orders entered in New Jersey and enter judgment in her favor on counts I and II. In particular, the Court will need to consider whether full faith and credit should be extended to the New Jersey orders and, if so, what preclusive effect those orders have in these proceedings.

The Full Faith and Credit Clause "requires the courts of this State to give full faith and credit to the judicial proceedings of our sister states." *O'Malley v. O'Malley*, 338 A.2d 149, 153 (Me. 1975). This means that "if a judgment is conclusive between the parties in the state in which it is rendered, it is equally conclusive in every other state of the Union" and "such judgments will be given the same effect as they have in the home forum." *Damon v. Webber*, 111 Me. 473, 477 (Me. 1914); *see also De Vlieg v. De Vlieg*, 492 A.2d 605, 607 (Me. 1985) ("We note for the guidance of the parties that full faith and credit requires that Maine accord Ohio judgments the same degree of finality as would Ohio."). As to foreign judgments and orders in divorce matters specifically, Maine's Law Court has stated that "it is well established that a valid judgment or decree in a divorce case is conclusive in any future action between the parties as to all facts directly in issue and actually or necessarily determined therein." *Coe v. Coe*, 71 A.2d 514, 515 (Me. 1950). Further, "[a] foreign judgment is entitled to full faith and credit -- even as to questions of jurisdiction -- when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment." *O'Malley*, 338 A.2d at 154.

On August 29, 2019, the court in New Jersey issued a divorce judgment in which, by approving and incorporating Roger and Jenni's marital settlement agreement into its order, it unambiguously approved the transfer of Roger's beneficiary interest to his children in an arrangement where the children's interest would be held for the children in the Farley Trust. It also ruled that Jenni has rights to the Steuben Camp resulting from the transfer. The divorce judgment made explicit reference not

only to Jenni and Roger's marital settlement agreement but to their prenuptial agreement, which incorporated the Round Pond Trust agreement. *Farley v. Mathews*, FM-15-292-19N (N.J. Super. Ct., Ocean Cnty., Aug. 19, 2019).

The Round Pond Trust document attached to the prenuptial agreement and incorporated into the divorce judgment provides that Roger is a beneficiary of the trust, has a right to construct a camp on the Round Pond Property, and has a right to transfer his beneficiary ownership. (Farley S.M.F. ¶¶ 9-10, 12.) It further provides that when a beneficiary of the trust is under eighteen years of age the parent of the minor beneficiary "shall be responsible for all obligations of said ownership and shall enjoy any benefits of the trust in the name of the beneficiary." (Farley's S.M.F. ¶ 11.) The prenuptial agreement provides that Roger agreed to transfer his beneficiary ownership in the Round Pond Trust property to his children by way of transfer to the Farley Trust, which was to hold those transferred property rights as an asset for his children. (Plaintiffs' S.M.F. ¶ 18.) Finally, the marital settlement agreement provides that Jenni owns the Steuben Camp subject to the terms of the parties' respective trusts and with the intention to preserve the property for the benefit of the children. (Plaintiffs S.A.F. ¶ 34.)

The divorce court in New Jersey issued a second order on December 4, 2020, to address post-judgment motions. In this order, the court explicitly found it had jurisdiction over Jenni and Roger's property rights in Maine. After hearing arguments, it ruled that Jenni has sole use and possession of the camp. (Farley S.M.F. ¶¶ 23-25); *Farley v. Mathews*, FM-15-292-19N at *2 (N.J. Super. Ct., Ocean Cnty., Dec. 4, 2020). To have reached that conclusion, the divorce court must have been mindful of the underlying agreements and trust documents when it found that Roger had transferred his beneficial interest in the Round Pond Trust to his children and that, as one of the children's parents, Jenni had acquired rights in the camp under the terms of the "Minor Beneficiaries" section of the Round Pond Trust agreement. The court would have also been mindful of the "Transfer of Ownership" provision

of the Round Pond Trust and found that the term "transfer" was expansive enough as used in the Trust agreement to include transfers to a minor beneficiary by conveying the minor beneficiary's Round Pond Trust interest into a trust controlled by the minor beneficiaries' parent to be held and maintained there for the minor beneficiary.

Both the August 2019 divorce judgment and the December 4, 2020 order of the New Jersey court were found valid and registered by the Maine Superior Court. *Farley v. Mathews*, MACSC-CV-2021-0008, 2022 Me. Super. LEXIS 20 (June 27, 2022). This Court must therefore consider what if any conclusive effect the judgment and order would have in New Jersey were that court to decide whether, as Plaintiffs urge, that "neither Jenni L. Farley nor the Jenni Farley 2015 Revocable Living Trust possess any ownership interest in the Round Pond Property." If res judicata would preclude such a finding in New Jersey, full faith and credit requires the same result when the issue is contested in Maine. *See De Vlieg*, 492 A.2d at 607 ("[F]ull faith and credit requires that Maine accord Ohio judgments the same degree of finality as would Ohio.").

The Supreme Court of New Jersey has articulated the elements of claim preclusion as follows:

> claim preclusion requires that (1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one.

*McNeil v. Legislative Apportionment Comm'n*, 177 N.J. 364, 395, 828 A.2d 840, 859 (2003). "Claim preclusion applies not only to matters actually determined in an earlier action, but to all relevant matters that could have been so determined." *Id.* "Causes of action are deemed part of a single claim if they arise out of the same transaction or occurrence." *Id.* The doctrine serves the purpose of providing "finality and repose; prevention of needless litigation; avoidance of duplication; reduction of unnecessary burdens of time and expenses; elimination of conflicts, confusion and uncertainty; and basic fairness[.]" *Wadeer v. N.J. Mfrs. Ins. Co.*, 220 N.J. 591, 606-07, 110 A.3d 19, 27-28 (2015).

The Maine Superior Court has already determined that the New Jersey divorce rulings are valid final judgments. *Farley v. Mathews*, MACSC-CV-2021-0008, 2022 Me. Super. LEXIS 20 (June 27, 2022).

Based on its previous analysis, this Court has determined Plaintiffs' claim concerning Jenni and her trusts rights to the Steuben Camp arises from the same transaction or occurrence as the claims decided in New Jersey. This leaves a single element to be decided, whether Plaintiffs should be considered in privity with Roger. The New Jersey Supreme Court has stated that:

> The concept of privity, as well as its parameters, are necessarily imprecise: Privity states no reason for including or excluding one from the estoppel of a judgment. It is merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include the other within the res judicata.

*Zirger v. Gen. Accident Ins. Co.,* 144 N.J. 327, 338, 676 A.2d 1065 (1996). "A relationship is usually considered 'close enough' only when the party is a virtual representative of the non-party, or when the non-party actually controls the litigation." *Id.* (quoting *Collins v. E.I. DuPont de Nemours & Co.*, 34 F.3d 172, 176 (3rd Cir.1994)).

To review: the plaintiffs are the Round Pond Trust, Bill as trustee and beneficiary of the trust, and Elaine, Deborah, Christa, Carey, and Catherine as further beneficiaries. Roger, also a beneficiary, has been a trustee since 2013. (Farley's S.M.F. ¶ 5.) As trustee, Roger owes fiduciary duties to the Trust and its beneficiaries, *see* N.J.S.A. § 3B:31-54 to – 70,[5] including the duty to "take reasonable steps to enforce claims of the trust and to defend claims against the trust." N.J.S.A. §3B:31-65. Accordingly, Roger is more than a "virtual representative" of the Round Pond Trust. He is in fact a representative of the trust. Roger was subject to his fiduciary obligations as trustee when he participated in his divorce. Further—and pertinent to this Court's analysis of privity—the record of proceedings in New Jersey shows the Round Pond Trust's attorney appeared on behalf of the Trust at the hearing concerning Jenni's possessory rights to the Steuben Camp. The attorney, although present, declined

---

[5] This is a reference to Article 7 of New Jersey's Uniform Trust Code which defines the duties and powers of a trustee in that state.

active participation in the hearing. (Page 1 of the December 4, 2020 Order of the New Jersey Superior Court registered in Maine by *Farley v. Mathews*, MACSC-CV-2021-0008, 2022 Me. Super. LEXIS 20). It is further apparent to the Court that the Round Pond could have intervened in Jenni and Roger's divorce proceedings to assert its claim regarding Jenni's rights that it has raised in these proceedings. *See* N.J. Court Rules, R. 4:33-1 (intervention as of right); *Meehan v. K.D. Partners, L.P.*, 317 N.J. Super. 563, 568, (App. Div. 1998) (criteria for a party to intervene as of right under R. 4:33-1); *Varela v. Varela*, 343 N.J. Super. 395, 397-98, 778 A.2d 615, 616-17 (Super. Ct. 2000) (a trustee appointed by a bankruptcy court to administer a husband's debtor estate was permitted to intervene for the purpose of taking part in litigation concerning distribution of marital assets); *Miko v. Miko*, 283 N.J. Super. 287, 288, 661 A.2d 859, 859 (Super. Ct. 1994) (a husband's employer was permitted to intervene in the parties' divorce action where the intervening employer moved to vacate a QDRO on the grounds that it would cause the employer to violate its fiduciary obligations to disburse benefits under a pension plan and ERISA). Given this array of interests and obligations, this Court considers Plaintiffs to have been in privity with Roger in the New Jersey divorce proceedings.

The summary judgment record establishes all three elements of New Jersey's doctrine of claim preclusion. The conclusion follows that the Superior Court of New Jersey, faced with Plaintiffs demands for declaratory judgment in count I and for injunctive relief in count II, would bar Plaintiffs' claim for a declaration that Jenni's trust has no ownership interest in the Steuben Camp and their claim for an injunction prohibiting Jenni from entering the Round Pond Trust property. This court must rule accordingly unless an exception to the Full Faith and Credit clause applies. *See De Vlieg*, 492 A.2d at 607; *O'Malley*, 338 A.2d at 153; *Damon v. Webber*, 111 Me. at 477.

The only exception to the Full Faith and Credit Clause potentially pertinent to this matter was established by the United States Supreme Court in *Fall v. Eastin*, 215 U.S. 1 (1909). In *Fall*, the Supreme Court held that state courts do not have jurisdiction over realty located in other states. As a

result, a state court's order purporting to have an in rem effect on foreign realty is void and the situs state need not accord it full faith and credit. *Fall*, 215 U.S. at 6-8; *see also Allis v. Allis*, 378 F.2d 721, 724 (5th Cir. 1967) (discussing *Fall*). In the same opinion, however, the Supreme Court established an exception to this exception: if a court has in personam jurisdiction over a litigant, the court may indirectly affect that litigant's rights in the foreign realty by means of an equitable decree. *See Fall*, 215 U.S. at 8 ("[I]t is an exception well defined. A court of equity having authority to act upon the person may indirectly act upon real estate in another State, through the instrumentality of this authority over the person. Whatever it may do through the party it may do to give effect to its decree respecting property, whether it goes to the entire disposition of it or only to effect it with liens or burdens.")

The Law Court has acknowledged the existence of the above exception in passing but has not had occasion to adopt it. *See De Vlieg*, 492 A.2d at 607 (briefly referencing the *Fall* doctrine). Courts of many other jurisdictions, given the opportunity, have applied the doctrine. They have held that foreign divorce judgments and other equitable decrees that affect property rights in the situs state are entitled to full faith and credit if the foreign court had in personam jurisdiction over the parties. *See e.g., Great Am. Life Ins. Co. v. Tanner*, 5 F.4th 601, 614 (5th Cir. 2021) (applying the doctrine articulated in *Fall v. Eastin* and holding that because a Mississippi court had personal jurisdiction over the parties it had authority to declare a transfer of mineral property rights, which occurred in another state, void for undue influence in the transaction); *Tobjy v. Tobjy*, 163 A.D.2d 303, 303, 557 N.Y.S.2d 436, 437 (App. Div. 1990) (holding that because an Oklahoma court had in personam jurisdiction over the defendant the Oklahoma court's divorce judgment ordering the defendant to convey property in New York was entitled to full faith and credit in New York); *McElreath v. McElreath*, 162 Tex. 190, 345 S.W.2d 722 (1961) (enforcing an equitable decree entered by an Oklahoma court in a divorce proceeding which ordered a party to transfer title to real property located in Texas under the principle of comity); *Phillips v. Phillips*, 224 Ark. 225, 226, 272 S.W.2d 433, 433-34 (1954) (affirming, based on

full faith and credit doctrine, a trial court judgment dismissing a complaint seeking to set aside a Kansas court's divorce judgment that required the parties to convey real property in Arkansas); *Larrabee v. Larrabee*, 31 Colo. App. 493, 494, 504 P.2d 358, 359 (1972) (affirming a trial court divorce judgment that required a party to convey real property located in Texas, rejecting that party's argument that the trial court lacked jurisdiction over the Texas real estate); 34 A.L.R.3d 962 (collecting numerous cases supporting the position that there is general agreement amongst the courts of the United States that a divorce court of one state has jurisdiction to indirectly affect title to real property located in another state if the divorce court has in personam jurisdiction over the parties). The Court agrees with the approach of the above courts on application of the *Fall* exception and will follow the majority view that if a divorce court has in personam jurisdiction over a litigant, the divorce court may indirectly affect that litigant's rights in foreign realty by means of an equitable decree.

Plaintiffs object to the Maine Superior Court's extension of full faith and credit to the New Jersey orders on the grounds that Jenni did not plead res judicata or full faith and credit defenses in her answer. This objection is overruled. Plaintiffs' complaint itself asks for the Court to examine the New Jersey orders and declare the validity Roger's transfer of his beneficiary interest to his children by moving those interests into the Farley Trust, which holds the interests for the children's benefit. Regardless of whether or not Jenni pleaded affirmative defenses based on the New Jersey orders, it is necessary for the Court to examine and apply the New Jersey orders to decide on Plaintiffs' complaint and necessary for the Court to honor its obligations under the Full Faith and Credit Clause.

Plaintiffs also object on the grounds that the New Jersey court lacked the jurisdiction to "redefine the terms of [the Round Pond Trust]" and affect the property rights of non-parties to Jenni and Roger's divorce. This misconstrues what the New Jersey court did in its divorce judgment and post-judgment order. The New Jersey divorce judgment did not "redefine the terms of the [Round Pond Trust]" by approving Roger and Jenni's agreement for Roger to transfer his beneficiary interest

to his children and for that interest to be held in the Farley Trust to be administered by Jenni. As discussed previously, the Round Pond Trust itself provides that beneficiaries may transfer their beneficiary interests to their lineal descendants (e.g. the beneficiary's children), construct a camp on the trust property, and that if a beneficiary is under the age of 18 their "parent(s) or legal guardian. . .shall be responsible for all obligations of said ownership and shall enjoy any benefits of the trust in the name of the beneficiary." By approving Roger's transfer of his beneficiary interest to his children and the holding and administration of that beneficiary interest by Jenni through her trust, the New Jersey court did not redefine the terms of the Round Pond Trust—it interpreted the terms of the trust and entered a judgment approving an arrangement that it found was consistent with its understanding of the terms of that trust.

The Court further notes that the "Transfer of Ownership" section of the Round Pond Trust appears not to prohibit conveyance to the children as specified in the divorce judgment. That section states that "beneficiaries shall be entitled during their lifetime or by will to transfer his or her beneficiary ownership in the trust, provided, however, that said interest may only be transferred to a lineal descendant by blood or adoption." (Farley S.M.F. ¶ 10). These broad terms permit transfer to a lineal descendant of a current beneficiary but do not limit the legal form in which that transfer might be accomplished, whether by direct ownership or as beneficiaries of a trust.

As to count I, Plaintiffs' demand for a declaratory judgment that the Farley Trust possesses no ownership interest is denied, as the New Jersey court's judgment interpreted the terms of the Round Pond Trust and approved the transfer of Roger's transfer of his beneficiary interest to his children and the holding of that interest in the Farley Trust for the children's benefit. In this arrangement, the children hold equitable title to the beneficiary interest while the Farley Trust holds legal title and administers that interest for the children's benefit. Plaintiffs' demand for a declaration that Jenni does not personally possess an ownership interest in Round Pond Trust property resulting

20

from the above transfer is granted—under the terms of the Round Pond Trust, Jenni, as the children's parent, has derivative rights to the beneficiary interest in the trust held by her children until they reach the age of 18 but she does not possess the beneficiary interest herself. Plaintiffs' request for a declaration that the Steuben Camp is subject to the terms of the Round Pond Trust is granted, as that declaration is consistent with the underlying transfer of Roger's beneficiary interest and the judgment of the New Jersey court. Plaintiffs' demands in Count I(c) to (e) for an order compelling Jenni or the Farley Trust to offer the Steuben Camp for sale to the Round Pond Trust is denied, as that demand would be inconsistent with the New Jersey court's judgment and post-trial order. The Court denies Plaintiffs' further demands in count I for an order enjoining Roger from undertaking actions inconsistent with the Court's order and to award costs to Plaintiffs until a later stage of these proceedings because those matters are not suited for adjudication at this time and because Plaintiffs have not shown through their motion that an injunction against Roger is necessary to ensure his compliance with the Court's rulings in this case. As to count II, Plaintiffs' demand for a permanent injunction barring Jenni from entering the Round Pond Trust property is denied because it is inconsistent with the New Jersey court's rulings and inconsistent with Jenni's derivative rights under the Round Pond Trust as the children's parent.

The Round Pond Trust describes Jenni's derivative rights in its section titled "Minor Beneficiaries" which states that if any beneficiary of the trust is under the age of 18, "then the parent(s) or legal guardian of said minor shall receive all notices and shall be responsible for all obligations of said ownership and **shall enjoy any benefits of the trust in the name of the beneficiary**." (Farley's S.M.F. ¶ 11) (quoting the Round Pond Trust document). The benefits enjoyed by Jenni and Roger's children include the right "to construct a 'camp' at an area designated by the Trustee," such as the Steuben Camp created by Jenni and Roger for their children. (Farley S.M.F. ¶ 9) (quoting the Round Pond Trust Document). As the children's parent, the benefits from the trust that Jenni enjoys include

the right to enter the Round Trust Property and use and enjoy the Steuben Camp. Per the terms of the Round Pond Trust, the Steuben Camp is owned by Jenni and Roger's children. *Id.* Once Roger and Jenni's children attain the age of 18, Jenni's derivative trust rights through them under the "Minor Beneficiaries" section of the Round Pond Trust will stop flowing. n

## B. Jenni's Motion for Summary Judgment on Count I (Breach of Fiduciary duty) of her Crossclaim Against Roger and Count I (Breach of Fiduciary Duty) of her Counterclaim Against Plaintiff Bill

"Under Maine common law, the elements of a breach of fiduciary claim are (1) a fiduciary relationship between the plaintiff and another person, (2) a breach of the other person's fiduciary duty toward the plaintiff, and (3) damages incurred by the plaintiff proximately caused by the breach." *Meridian Med. Sys., LLC v. Epix Therapeutics, Inc.*, 2021 ME 24, ¶ 12, 250 A.3d 122. "A trustee properly administers a trust only by complying with applicable standards of fiduciary care," *Estate of Wilde*, 1998 ME 55, ¶ 8, 708 A.2d 273, such as those found in the Maine Uniform Trust Code, 18-B M.R.S. § 801 *et seq.*

In regard to her claims for breach of fiduciary duties against plaintiff Bill, and Roger, Jenni asserts in her motion for summary judgment that both of them have breached their fiduciary duties to her and the Farley Trust as trustees of the Round Pond Trust by "denying that there was a legally effective transfer [of the Steuben Camp]. . .and continuing to deny to Ms. Farley. . .as the parent of a minor beneficiary, the right to possess and enjoy the [Steuben Camp]. . ." (Farley's Mot. Summ. J. 11.) However, Jenni's S.M.F. in support of her motion does not include any paragraphs asserting the necessary facts to support her claim of breach. For example, her S.M.F. does not assert anywhere that Bill has denied that there was a legally effective transfer of the Steuben Camp or facts indicating that he has been denying Jenni's right to enter the Steuben Camp. Nor does her motion or accompanying memo state what particular section of the Maine Uniform Trust Code Bill and Roger have purportedly

22

violated nor otherwise provide a source of authority describing what fiduciary duty they have violated. While Jenni does assert that Roger objected to registration of the New Jersey divorce judgment and order in Maine, she has not presented the Court with any legal authority indicating that such conduct is per se a breach of fiduciary duty. This showing falls far below what is necessary for a counterclaim plaintiff to obtain summary judgment under M.R. Civ. P. 56. *See Kondaur Capital Corp. v. Hankins*, 2011 ME 82, ¶ 17, 25 A.3d 960 (a plaintiff moving for summary judgment "has the ultimate burden of proof" and must "demonstrate that each element of its claim is established without dispute as to material fact within the summary judgment record."); *Berry v. MaineStream Fin.*, 2019 ME 27, ¶ 7, 202 A.3d 1195 (the facts in the summary judgment record are limited to those facts which are properly set forth in the parties' respective statements of fact.); M.R. Civ. P. 7(b)(3) (a party filing a motion for summary judgment must provide a memorandum of law including citations to supporting authorities).

For the above reasons, the Court denies Jenni's motion for summary judgment on count I of her counterclaim against Bill and count I of her counterclaim against Roger.

## C. Jenni's Motion for Summary Judgment on Count II (breach of contract) of her Crossclaim against Roger

Jenni seeks summary judgment on her breach of contract counterclaim on the same grounds that she claims Roger is liable for breach of fiduciary duty and also on the grounds that Roger's position in this case and in the Washington County registration proceedings "is an effort to repudiate the [prenuptial agreement] he voluntarily entered into." (Farley Mot. Summ. J. 11.) However, Jenni does not identify anywhere in her motion for summary judgment or S.M.F. what particular provision of the parties' prenuptial agreement she asserts Roger has violated. Nor has Jenni provided any citations to legal authorities to support her argument that Roger has breached the prenuptial

agreement.[6] This is not an adequate showing for a moving plaintiff to obtain summary judgment on a breach of contract claim. *See Kondaur Capital Corp. v. Hankins*, 2011 ME 82, ¶ 17, 25 A.3d 960 (a plaintiff moving for summary judgment "has the ultimate burden of proof" and must "demonstrate that each element of its claim is established without dispute as to material fact within the summary judgment record."); M.R. Civ. P. 7(b)(3) (a party filing a motion for summary judgment must provide a memorandum of law including citations to supporting authorities). The Court therefore denies Jenni's motion for summary judgment on count II of her crossclaim against Roger.

### D. Jenni's Motion for Summary Judgment on Count II (breach of contract) of her Counterclaim Against Bill.

The second count of Jenni's counterclaim alleges that Bill, as trustee of the Round Pond Trust has breached the prenuptial agreement and marital settlement agreement that Jenni and Roger entered into prior to their divorce. Jenni moved for summary judgment on that counterclaim (Farley Mot. Summ. J. 1.) but did not provide any legal argument to support that part of her motion. Nor did she assert sufficient facts in her S.M.F. to support even a prima facie case of her counterclaim. Neither did Jenni set forth such facts in her opposition statement to Bill's S.M.F. Amongst other deficiencies, both her S.M.F. and opposition statement lack any facts indicating that Bill is a party to Jenni and Roger's prenuptial agreement and marital settlement agreement. The Court therefore denies Jenni's motion for summary judgment on count II of her counterclaim.

### E. Plaintiffs Motion for Summary Judgment on Counts I (Declaratory Judgment) and II (Permanent Injunction) of their Complaint Against Jenni

Having granted Jenni's motion for summary judgment on count II of Plaintiffs' complaint in its entirety, the Court necessarily denies Plaintiffs' motion on count II in its entirety. As to count I,

---

[6] The contract at issue, Jenni and Roger's prenuptial agreement, appears to be governed by New Jersey law, rather than Maine law. (*See* paragraph 33.6 of the prenuptial agreement attached as Exhibit 2 to Farley's S.M.F.)

the Court reaches the same determinations that it did as to Jenni's motion for summary judgment on that count. The Court directs the reader to section III(A) of this order for those determinations. Based on and consistent with its previous analysis, the Court grants Plaintiffs' motion as to count I in part and denies in part, entering the same determinations that it set forth as to Jenni's cross-motion on that same count in section III(A) of this order. The Court denies the motion as to count II based on its previous analysis found in section III(A).

### F. Plaintiffs' Motion for Summary Judgment on Jenni's Counterclaims

Jenni has raised three counterclaims against Plaintiffs. Count I, which is directed only against plaintiff Bill, alleges that Bill has breached his fiduciary duties to Jenni as trustee of the Round Pond Trust. Count II, which is also directed only against Bill, alleges that he has breached the prenuptial agreement and marital agreement that Jenni and Roger entered into. In count III, Jenni alleges that all Plaintiffs have been unjustly enriched by "by having received the value of the home Jenni Farley constructed on the property." (Farley's Counterclaim ¶ 24.) The Court will discuss each count in turn.

#### 1. Counterclaim Count I (Breach of Fiduciary Duty)

As noted previously, "[u]nder Maine common law, the elements of a breach of fiduciary claim are (1) a fiduciary relationship between the plaintiff and another person, (2) a breach of the other person's fiduciary duty toward the plaintiff, and (3) damages incurred by the plaintiff proximately caused by the breach." *Meridian Med. Sys., LLC v. Epix Therapeutics, Inc.*, 2021 ME 24, ¶ 12, 250 A.3d 122. "A trustee properly administers a trust only by complying with applicable standards of fiduciary care," *Estate of Wilde*, 1998 ME 55, ¶ 8, 708 A.2d 273, such as those found in the Maine Uniform Trust Code, 18-B M.R.S. § 801 *et seq.* In her written motion arguments to this Court, Jenni asserted that Bill breached his fiduciary duties to her as a trustee of the Round Pond Trust by "denying that there was a legally effective transfer [of the Steuben Camp]. . .and continuing to deny to Ms. Farley. . .as the

parent of a minor beneficiary, the right to possess and enjoy the [Steuben Camp]. . ." (Farley's Mot. Summ. J. 11.)

The Court denied Jenni's motion for summary judgment in her favor on this counterclaim because she did not assert sufficient facts in her S.M.F. to support her claim that Bill breached his fiduciary duties to her and failed to provide supporting legal authority in her accompanying legal memo regarding the claim. Because Jenni's opposing statement to Plaintiffs' S.M.F. does not add any additional facts that would support a prima facie case of breach of fiduciary duty against Bill and her opposition memo offers no argument on this aspect of Plaintiffs' motion, the Court grants Plaintiffs' motion on count I of Jenni's counterclaim.

### 2. Counterclaim Count II (Breach of Contract)

The second count of Jenni's counterclaim alleges that Bill, as trustee of the Round Pond Trust has breached the prenuptial agreement and marital settlement agreement that Jenni and Roger entered into prior to their divorce. Jenni has not provided any legal argument in her motion filings as to count II of her counterclaim against plaintiff Bill nor, as previously discussed, has she set forth any facts in her S.M.F. or opposition statements indicating that Bill is a party to Jenni and Roger's prenuptial agreement and marital settlement agreement. The Court therefore grants Bill's motion for summary judgment on count II of Jenni's counterclaim.

### 3. Counterclaim Count III (Unjust Enrichment)

In her opposition memo, Jenni conceded that her unjust enrichment claim is only actionable if the Court concludes that Roger did not effectively transfer his beneficiary interest in the Round Pond Trust and noted for the Court that she asserted the claim "only in the event that the Court were to determine there was no valid transfer." (Farley's Opp'n to Plaintiffs' Mot. Summ. J. 6-7.) As previously discussed in this Order, the Court has extended full faith and credit to the rulings of the

New Jersey Superior Court on this matter and therefore recognized that Roger effectively transferred his beneficiary interest to his children by placing that interest in the Farley Trust for their benefit. Accordingly, the Court acknowledges that Jenni has conceded her unjust enrichment claim and therefore, grants Plaintiffs' motion for summary judgment on that claim.

### G. Plaintiffs' Motion for Summary Judgment on Count I (declaratory judgment) of their Complaint Against Roger

As to Roger, count I of Plaintiffs' complaint[7] requests that the Court "Order Roger W. Mathews III to undertake no actions inconsistent with this Order"—with "this Order" meaning Plaintiffs' requested declarations regarding Jenni (such as the requested declaration that Jenni lacks any property rights in the Steuben Camp). The Court denies summary judgment on this count as this request for injunctive relief is inappropriate for disposition at the summary judgment stage, as the Court has not entered a final judgment on the entirety of the claims at issue in this case. In addition, the court concludes that denial of summary judgment on this demand for injunction is appropriate because Plaintiffs have not set forth a sufficient factual basis in their motion filings to support entering the requested injunction.

### H. Jenni's Request for Attorney's Fees Pursuant to 18-B M.R.S. § 1004

18 M.R.S. § 1004 provides: "In a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney's fees, to any party, to be paid by another party or from the trust that is the subject of the controversy." Jenni requests that the Court enter an order awarding her attorneys' fees in this action with respect to the disputes between herself, Bill, and Roger, on the grounds that, as trustees of the Round Pond Trust, their arguments against her positions in this case "are specious, without merit and

---

[7] Count II of Plaintiffs' complaint is not directed at Mathews III and makes no claim regarding him.

undertaken in bad faith." (Farley's Mot. Summ. J. 12.) The Court declines to rule on Jenni's request for attorney's fees, costs, and expenses, until all of her claims against Roger have been resolved.

## IV.    CONCLUSION

In these proceedings on the parties' cross-motions for summary judgment, the Court has granted Jenni's motion for summary judgment on count I in part, upon the terms set forth in section III(A) of this Order. The Court has granted Jenni summary judgment on count II of Plaintiffs' complaint. However, the Court has denied summary judgment on count I and count II of her counterclaim against Bill and denied summary judgment on count I and count II of her crossclaim against defendant Roer. The Court has also granted Plaintiffs' motion for summary judgment on counts I in part and denied in part upon the terms set forth in section III(A) of this Order. The Court has denied Plaintiffs' motion for summary judgment on count II but granted Plaintiffs' motion as to counts I-III of Jenni's counterclaim. Lastly, the Court has declined to rule on Jenni's request for attorney's fees under 18-B M.R.S. § 1004, until the entirety of her claims in this action against Roger have been resolved.

Entry:

1. Defendant Jenni Farley's motion for summary judgment is granted in part and denied in part.

2. Plaintiffs' motion for summary judgment is granted in part and denied in part.

The Court directs the Clerk to incorporate this Order on the docket by reference pursuant to M.R. Civ. P. 79(a).

12/01/2023
Date

_Bruce C. Mallonee_
The Hon. Bruce Mallonee
Justice, Maine Superior Court