UNITED STATES DISTRICT COURT
DISTRICT OF MAINE


JENNI L. FARLEY, in her      )
capacity as Trustee of       )
the Jenni Farley 2015        )  Case No.
Revocable Living Trust,      )  1:24-cv-00358-JCN
                             )
          Plaintiff,         )
                             )
   vs.                       )
                             )
ROGER W. MATHEWS, JR.,       )
Individually and in his      )
capacity as Trustee of       )
the Mathews Family Round     )
Pond Revocable Trust -       )
2009,                        )
                             )
          Defendant.         )



ZOOM DEPOSITION OF:

JENNIFER MATHEWS

   Taken before Lynne Morrison, Notary

 Public in and for the State of Maine,

pursuant to notice, via Zoom hosted by G&F

Reporting, Portland, Maine, on March 11, 2025,

commencing at 1:08 p.m.




Lynne M. Morrison
G&F REPORTING/HUSEBY GLOBAL LITIGATION
75 York Street, Suite 2 - Portland, ME 04101
scheduling@gandfreporting.com  (207) 854-5296
www.gandfreporting.com


EXHIBIT
DSOMF-F



1          Do you recognize that document?

2    A.   Yeah.

3    Q.   Here's my question for you.  Can you just give

4         me the background -- first of all, you are a

5         signatory to that document?

6    A.   Yes.

7    Q.   And you understand that to be an agreement

8         that you entered into with my client in her

9         capacity as trustee of a trust?

10   A.   Yes.

11   Q.   Okay.  Can you just -- I mean, that involves

12        some property in Steuben, Maine.

13          Do you agree with that?

14   A.   Yes.

15   Q.   And are you familiar with that property?

16   A.   Yes.

6    Q.   All right.  Who is your father, Ms. Mathews?

7    A.   His name is Everett Mathews, Junior.

22   Q.   And Ms. Stone has put on the screen, Ms.

23        Mathews, the first page of what I have marked

24        as Exhibit No. 1 in the case, which is an

25        Installment Sale Agreement.



10 Q. Would you also agree that you're not a lineal
11    descendent of Roger W. Mathews the third?
12 A. Yeah, correct.
13 Q. And would you agree that you're not a lineal
14    descent of his children, Grayson and -- is it
15    Melania?
16 A. Melania, yeah.
17 Q. So you would agree that you're not a lineal
18    descendent of them?
19 A. Right.

1 Q. And your sister's is not, correct?
2 A. Correct.
3 Q. And your father has not written or assigned or
4    transferred his beneficial interest to you,
5    correct?
6 A. Correct.
7 Q. Did you read the trust declaration -- the
8    trust document prior to signing the contract?
9 A. Yes.
10 Q. So you were aware that to acquire an interest
11    in the property, you would have to have been a
12    lineal descendent of someone, correct?
13 A. Correct.
14 Q. And did you ever ask your father to assign his
15    beneficial interest to you?
16 A. No.
17 Q. Prior to signing the contract, did you ask
18    your father to give notice to the trustee of
19    an intention to assign any beneficial
20    interest?
21 A. No.

15 Q. Okay. So your father is a beneficiary,
16    correct?
17 A. Correct.

23 Q. And your name is not on that document as one
24    of the beneficiaries, correct?
25 A. Correct.

```
 1                    STATE OF MAINE

 2

 3          I, Lynne M. Morrison, a Notary Public in

 4    and for the State of Maine, do hereby certify that

 5    pursuant to notice there remotely came before me

 6    on March 11, 2025 the following-named person to

 7    wit:  JENNIFER MATHEWS, who was duly sworn to

 8    testify to the truth and nothing but the truth;

 9    that she was thereupon carefully examined upon her

10    oath and her examination reduced to writing under

11    my supervision; that this deposition is a true

12    record of the testimony given by the witness.

13          I further certify that I am neither

14    attorney nor counsel for, nor related to, nor

15    employed by any of the parties to the action in

16    which this deposition is taken, and further, that

17    I am not a relative or employee of any attorney or

18    counsel employed by the parties hereto, or

19    financially interested in this action.

20          IN WITNESS WHEREOF, I have hereunto set my

21    hand this 29th day of March, 2025.

22

23                        _____
                          Lynne M. Morrison
24
      My Commission Expires
25    April 4, 2026
```

EXHIBIT

1

## INSTALLMENT SALE AGREEMENT

This INSTALLMENT SALE AGREEMENT (this "Agreement") is made as of this 10th day of September, 2024 (the "Effective Date"), by and between **Jenni Farley, as Trustee of the Jenni Farley 2015 Living Revocable Trust**, a trust established under the laws of New Jersey (hereinafter referred to as "Seller") and **Jennifer Mathews**, an individual resident of Maine (the "Buyer");

WHEREAS, Seller owns certain buildings, improvements, furniture and fixtures all as described on **Exhibit A** attached hereto and made a part hereof (the "Property") on the real estate located at 263 Round Pond Road, Steuben, Maine (the "Real Estate") owned by The Mathews Family Round Pond Revocable Trust – 2009 (the "Mathews Trust");

WHEREAS, the Property being erected on the Real Estate with the consent of the Mathews Trust, is and shall continue to be deemed personal property;

WHEREAS, Buyer desires to purchase from Seller and Seller is willing to sell to Buyer the Property upon and subject to the provisions hereof, and subject to the restrictions imposed by the Mathews Trust;

NOW, THEREFORE, in consideration of the foregoing, the mutual covenants and promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties mutually agree as follows:

1.     Purchase and Sale. Seller hereby agrees to sell to Buyer and Buyer hereby agrees to purchase from Seller, the Property. Seller shall, upon full payment of the Purchase Price (as defined below) and satisfaction of all the terms and conditions set forth herein, deliver to Buyer a Bill of Sale in substantially the same form as the attached **Exhibit B** (the "Bill of Sale"), transferring all rights, title and interest in the Property to the Buyer.

2.     Purchase Price; Installment Payment Schedule. The purchase price for the Property shall be FIVE HUNDRED THOUSAND DOLLARS ($500,000.00), plus interest and other charges as set forth as follows (the "Purchase Price"):

a.     If the entire Purchase Price is delivered to Seller on or prior to September 1, 2029 (the "Original Closing Date") in accordance with Section 4 below, the Purchase Price shall be FIVE HUNDRED FORTY-FIVE THOUSAND THIRTY-ONE and 65/100 DOLLARS ($545,031.35), as adjusted in accordance with sub-section (c) below;

b.     If the Buyer elects to defer payment of the entire Purchase Price in accordance with Section 4 below (the "Alternate Closing Date" and collectively with the Original Closing Date, the "Closing Date"), the Purchase Price shall be FIVE HUNDRED

1

SIXTY-EIGHT THOUSAND SEVEN HUNDRED EIGHTY-NINE and 18/100 DOLLARS ($568,789.18), as adjusted in accordance with sub-section (c) below.

        c.      The Purchase Price, as stated above, includes payment of interest on $500,000, at the rate of Two Percent (2%) per annum based on a 360-day calendar year, assuming that all payments are made in accordance with the Payment Schedule set forth in Sections 3(a)-(c), below. The Purchase Price is subject to increase due to the default interest rate, late fees, or other indemnification obligations of the Buyer which may be charged to Buyer as a result of her failure to perform her obligations hereunder, and the Purchase Price may decrease only as a result of Buyer's prepayment of the Purchase Price.

    3.   <u>Payment Schedule</u>. The Purchase Price shall be paid as follows:

        a.      Upon execution of this Agreement, Buyer shall pay to Seller Twenty Thousand Dollars ($20,000.00) (the "<u>First Installment</u>").

        b.      After application of the First Installment, and beginning on November 1, 2024, and continuing on the first day of each month thereafter until the Closing Date (as defined below), the Buyer shall make equal monthly payments (the "<u>Installment Payments</u>") of One Thousand Seven Hundred Seventy-Four Dollars and 17/100 ($1,774.17).

        c.      On the Closing Date, the remaining balance of the Purchase Price shall become due and payable in full (the "<u>Balloon Payment</u>").

        d.      Buyer shall have the right to prepay any portion of the Purchase Price without penalty. Any payments hereunder shall be first applied to any late charges or other fees and expenses, if any, then to any interest included in the Purchase Price, and then to the unpaid balance of the Purchase Price until the same is paid in full.

    4.   <u>Closing Date</u>.  Buyer shall use her best efforts to obtain financing for the Balloon Payment prior to the Original Closing Date. If, notwithstanding such best efforts, the Buyer is unable to obtain financing for the Balloon Payment prior to the Original Closing Date, the Buyer shall have the right to extend the deadline to pay the Balloon Payment by up to, but not exceeding, three (3) years from the Original Closing Date, by providing written notice to the Seller at least 30 days before the Original Closing Date (the "<u>Deferral Notice</u>") and paying $5,000.00 to be applied to the Purchase Price. The Deferral Notice shall set forth, in reasonable detail, the efforts that Buyer made to secure financing for the Balloon Payment and shall specify the Alternate Closing Date.

5. <u>Ownership</u>. Until the Purchase Price is paid in full, all terms and conditions hereunder are satisfied, and until the Bill of Sale is delivered to Buyer, Seller shall retain all right, title and interest in the Property. Buyer agrees that Seller is the owner of the Property at all times until the Purchase Price and all other interest, costs and fees due hereunder are paid in full and all other terms and conditions are satisfied.

6. <u>Possession; Use of the Property</u>. Upon execution of this Agreement, and so long as Buyer performs her obligations hereunder, Buyer shall have the right to occupy and possess the Property for her own personal use.

7. <u>Obligations of Buyer</u>. Buyer shall, until Seller's delivery of the Bill of Sale to Buyer or the earlier termination of this Agreement, perform the following obligations:

a. <u>Payment of Taxes, Utilities and Other Charges</u>. Buyer shall pay when due all sums due hereunder, and all real estate and personal property taxes allocable to Seller, all costs of utilities used with respect to the Property, and any claim, lien or encumbrance against the Property. If Buyer fails to defend against or pay any claim, lien or encumbrance against the Property, or when due, any tax assessment or insurance premium, or to keep the Property in repair, or shall commit or permit waste, then Seller may, at its option, pay said claim, lien, encumbrance, tax, assessment or premium, with right of subrogation thereunder, may make such repairs and take such steps as it deems advisable to prevent or cure such waste, and for any of said purposes, Seller may advance such sums of money as it deems necessary. Buyer shall then pay to Seller, immediately and without demand, all sums of money advanced by Seller pursuant to this Section, and all fees and charges, including attorney fees, together with interest on each such advance at the Default Rate.

b. <u>Insurance</u>. Buyer shall obtain and maintain general liability insurance on the Property in an amount not less One Million Dollars ($1,000,000.00). Buyer shall name Seller as an Additional Insured/Loss Payee on such policy providing Seller with at least 30 days' written notice of any change, modification, or cancellation of such insurance policy. Buyer shall provide a copy of such insurance policy to Buyer within five (5) business days of the Effective Date. Seller shall maintain its current homeowner's insurance policy with respect to the Property (the "<u>Homeowner's Policy</u>") and Buyer shall reimburse Seller for all costs, fees, and premium payments associated with maintaining the Homeowner's Policy immediately following Seller's payment of such costs.

c. <u>Maintenance and Repair of Property</u>. Buyer: (a) shall not remove or demolish or alter the design or structural character of the Property, unless Seller shall first consent thereto in writing; (b) shall maintain the Property in good and safe condition and repair; (c) shall not commit or suffer waste thereof; (d) shall comply with all laws,

3

ordinances, regulations, covenants, conditions and restrictions affecting the Property and will not suffer or permit any violation thereof; and (e) shall promptly repair, replace or rebuild any part of the Property which may be destroyed by any casualty, become damaged, worn or dilapidated, or which may be affected by any threat of condemnation.

      d.    <u>Prohibition of Liens and Transfers</u>. Buyer shall not convey, encumber, sell, contract to sell, or otherwise transfer the title, ownership, right of possession or any other interest in the Property, or in any part thereof, nor shall any interest in the Property pass from Buyer, either voluntarily, involuntarily, by operation of law, or otherwise. If any claim, lien, encumbrance or assessment is placed against the Property, Buyer shall immediately remove such claim, lien, encumbrance or assessment from the Property.

      8.    <u>Representations, Acknowledgements, and Warranties of Buyer</u>. Buyer hereby makes the following representations, acknowledgments and warranties to Seller and certifies that the same are true, correct and complete:

      a.    Buyer is a beneficiary under the Mathews Trust and presently has the right to own a "camp" on the Real Estate in accordance with Section 5A of the Mathews Trust agreement, a true and accurate copy of which is attached hereto as **Exhibit C** (the "Trust Agreement").

      b.    Buyer has reviewed the Trust Agreement and acknowledges that said Trust Agreement imposes restrictions on the Property which may affect the marketability and sale of the Property in the future.

      c.    Buyer has the full power and capacity necessary to enter into and perform her obligations under this Agreement, to purchase and acquire the Property pursuant to this Agreement and to consummate the transactions contemplated hereby. This Agreement constitutes a legal, valid and binding obligation of Buyer.

      d.    There is no broker or finder or other person who would have a valid claim against the Seller for a commission, finder's fee or brokerage fee in connection with the sale of the Property by virtue of any actions taken by Buyer.

      9.    <u>Property Sold As Is</u>. The Property is furnished as is, where is, and with all faults and without warranties of any kind, express or implied, including, without limitation, any implied warranty of merchantability or fitness for any purpose.

10.    Casualty Loss. In the event the Property is damaged or destroyed by fire, flood, hurricane, or any other casualty event covered by the Homeowner's Policy (a "Casualty Loss"), the following shall apply:

a.    If the insurance proceeds received as a result of a Casualty Loss are less than the outstanding balance of the Purchase Price as of the date such proceeds are received by Seller, the Seller shall retain all insurance proceeds, and such amounts shall be credited towards Buyer's payment of the Purchase Price. Thereafter, Buyer shall remain obligated to pay the outstanding balance of the Purchase Price.

b.    If the insurance proceeds received as a result of a Casualty Loss are equal to or greater than the outstanding balance of the Purchase Price as of the date such proceeds are received by Seller, the Seller shall retain the insurance proceeds but shall credit back to Buyer an amount equal to the lesser of (i) the amount of Purchase Price that the Buyer has actually paid to the Seller and (ii) the amount of insurance proceeds on account of a Casualty Loss in excess of the Purchase Price. The date upon which Seller receives the insurance proceeds in such event shall be the Closing Date.

c.    In no event shall Seller be responsible for rebuilding or repairing the Property or any portion thereof. The Buyer shall be solely responsible for the payment of any fees, costs, and deductibles required as a result of making a claim against the Homeowner's Policy and for all costs of repair of the Property. Buyer and Seller shall cooperate in initiating and pursuing any claims against the Homeowner's Policy for the damage or destruction of the Property as a result of a casualty event.

11.    Indemnification of Seller. Buyer shall protect, defend, indemnify and save harmless Seller from and against all liabilities, obligations, claims, demands, damages, penalties, causes of action, losses, fines, costs and expenses (including without limitation reasonable attorney fees and expenses), imposed upon, incurred by or asserted against Seller by reason of: (a) Buyer's possession, occupancy, and/or use of the Property, including any use or occupancy by any guest, invitee, or licensee of Buyer; (b) any accident, injury to or death of persons or loss or damage to property occurring in or about the Property or any part thereof; (c) any failure on the part of the Buyer to perform or comply with any of the terms of this Agreement; (d) performance of any labor or services or the furnishing of materials or other property in respect to the Property or any part thereof; and (e) any of Buyer's representations made hereunder being untrue.

12.    Events of Default. The happening of any of the following shall constitute an event of default hereunder (each, an "Event of Default"): (a) Buyer's failure to pay the Purchase Price, or any portion thereof, as and when due; (b) Buyer's failure to perform any

5

of her other obligations hereunder, including, without limitation, her obligations under Section 7, above; (c) the commencement of any proceeding under any state or federal bankruptcy or insolvency law or under laws of relief of debtors by, or against, the Buyer; (d) any representation or statement made or furnished to Seller by or on behalf of Buyer is false or misleading in any material respect; or (e) the issuance or filing of any attachment, levy or other judicial process on or against the Property, that is not removed from the Property within thirty (30) days.

13.     Remedies. Upon the occurrence of any Event of Default, the Seller may, in its sole discretion, upon written notice to Buyer: (a) declare all remaining amounts of the Purchase Price due and payable at once; or (b) terminate this Agreement effective immediately. In the event Seller elects to accelerate the payment of the Purchase Price, Buyer shall have seven (7) business days to pay the remaining balance of the Purchase Price to Seller including, all other interest, fees and costs due to Seller. At the end of the seven (7) day period, if Buyer has not paid all such amounts due to Seller hereunder, this Agreement shall automatically terminate without any other or further action by Seller and Buyer shall have no right to possess, occupy or use the Property. In the event this Agreement is terminated pursuant to this Section 13 and Buyer thereafter continues to occupy and use the Property, the Buyer shall be deemed a tenant at sufferance, and Seller shall have the right to exercise all other remedies against Buyer, including initiating a forcible entry and detainer action to evict Buyer from the Property.

14.     Default Interest Rate. If any portion of the Purchase Price is not paid when due, whether caused by acceleration of the payments of the Purchase Price or otherwise, the unpaid balance of the Purchase Price, plus accrued interest thereon, shall bear interest at the annual rate equal to five (5) percentage points greater than the non-default rate in effect at the time of such non-payment. Notwithstanding any provision in this Agreement to the contrary, the total liability for payments legally regarded as interest shall not exceed the maximum limits imposed by applicable law, and any payment of the same in excess of the amount allowed thereby shall, as of the date of such payment, automatically be deemed to have been applied to the payment of the Purchase Price, or if the same has been fully paid, shall be repaid to Buyer upon written demand.

15.     No Waiver. No waiver of any payment or performance obligation under this Agreement operates as a waiver of any other payment or performance obligation. Seller's delay or failure to exercise any right of remedy provided for hereunder shall be deemed a waiver of such rights by Seller and no exercise of any right or remedy shall be deemed a waiver of any other right or remedy that Seller may have. Any waiver of such obligations shall be effective only if in writing and signed by Seller.

16.     Termination. If this Agreement is terminated for any reason, including by reason of an Event of Default, all amounts paid by Buyer to Seller hereunder shall remain the property of the Seller and Buyer shall have no right or entitlement for repayment of such funds.

17.     Notice. All notices and other communications hereunder shall be in writing and shall be deemed given if delivered personally or received by facsimile transmission, or mailed by registered or certified mail (return receipt requested), postage prepaid (in the case of mailing any such notices shall be deemed given two (2) days after deposit in the United States mails), to the parties at the following addresses (or at such other address for a party as shall be specified by like notice; provided that notices of a change of address shall be effective only upon receipt thereof):

To Seller as follows:

> Jenni Farley, Trustee of
> The Jenni Farley 2015 Revocable Living Trust
> 4 Maple Leaf Drive
> Holmdel, New Jersey 07733

With a copy to:

> Jennie L. Clegg, Esq.
> Brendan T. Barry, Esq.
> Marcus | Clegg
> 16 Middle Street, Suite 501
> Portland, Maine 04101

To Buyer as follows:

> Jennifer Mathews
> 67 Kelley Road
> Milbridge, Maine 04658

18.     **WAIVER OF JURY TRIAL. BUYER, TO THE EXTENT PERMITTED BY APPLICABLE LAW, HEREBY IRREVOCABLY AND UNCONDITIONALLY (A) SUBMITS TO PERSONAL JURISDICTION OF THE STATE OF MAINE OVER ANY SUIT, ACTION, OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT AND (B) WAIVES ANY AND ALL PERSONAL RIGHTS UNDER THE LAWS OF ANY STATE AND UNDER THE UNITED STATES CONSTITUTION (I) TO THE RIGHT, IF ANY, TO TRIAL BY JURY, (II) TO OBJECT TO**

7

JURISDICTION WITHIN THE STATE OF MAINE OR VENUE IN ANY PARTICULAR FORUM WITHIN THE STATE OF MAINE, AND (III) THE RIGHT, IF ANY, TO CLAIM OR RECOVER ANY SPECIAL, EXEMPLARY, PUNITIVE, OR CONSEQUENTIAL DAMAGES OR ANY DAMAGES OTHER THAN ACTUAL DAMAGES. NOTHING CONTAINED HEREIN, HOWEVER, SHALL PREVENT SELLER FROM BRINGING ANY SUIT, ACTION, OR PROCEEDING OR EXERCISING ANY RIGHTS AGAINST BUYER IN ANY OTHER STATE. INITIATING SUCH SUIT, ACTION OR PROCEEDING OR TAKING SUCH ACTION IN ANY STATE SHALL IN NO EVENT CONSTITUTE A WAIVER OF THE AGREEMENT CONTAINED HEREIN THAT THE LAWS OF THE STATE OF MAINE SHALL GOVERN THE RIGHTS AND OBLIGATIONS OF BUYER AND SELLER HEREUNDER AND THE SUBMISSION HEREIN MADE BY BUYER TO PERSONAL JURISDICTION WITHIN THE STATE OF MAINE.

19.     Miscellaneous.

a.     Entire Agreement. This Agreement, together with Exhibits hereto which are by this reference incorporated herein, supersedes all prior agreements between the parties (written or oral) and, except as aforesaid, is intended as a complete and exclusive statement of the terms of the agreement between the parties. This Agreement may be amended only by a written instrument duly executed by the parties.

b.     Governing Law. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF MAINE, WITHOUT REGARD TO ITS PRINCIPLES OF CONFLICTS OF LAWS.

c.     Headings. The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

d.     Assignability. No party hereto shall assign this Agreement or any per hereof without the prior written consent of the other party. Any purported assignment without prior written consent of the other party shall be null and void.

e.     Third-Party Beneficiary. Noting in this Agreement shall entitle any person other than the Seller or Buer or their respective permitted successors and assigned to any claim, cause of action, remedy or right of any kind.

f.     Severability. In the event any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall, at the option of Seller, not affect any other provision of this Agreement, but this Agreement shall

be construed as if such invalid, illegal or unenforceable provision had never been contained herein or therein.

        g.      Counterparts. This Agreement may be executed in any number of counterparts, each of which must be executed by both parties, and each such fully executed counterpart shall constitute an original of this Agreement.

        h.      Binding Effect. This Agreement shall inure to the benefit of and be binding upon the parties hereto and their heirs, personal representatives, successors and assigns, and other legal representatives.

        i.      Statute of Frauds. Buyer acknowledges that this paragraph shall constitute notice that Maine law provides that Buyer may not maintain an action upon any agreement to lend money, extend credit, forbear from collection of a debt, or make any other accommodation for the repayment of a debt for more than Two Hundred Fifty Thousand Dollars ($250,000.00) unless the promise, contract or agreement is in writing and is signed by a person lawfully authorized to sign for the party to be charged with the promise, contract or agreement.

[Signature page follows]

IN WITNESS WHEREOF, the parties execute this Agreement as a sealed instrument as of the Effective Date.

**BUYER:**

**SELLER:**

THE JENNI FARLEY 2015
REVOCABLE LIVING TRUST

_____
Jennifer Mathews

By: _____
Name: Jenni Farley
Title: Trustee

WITNESS

WITNESS

_____
Jon Cota

_____

10

## Exhibit A

### The Property

The building and garage located at 263 Round Pond Road, Steuben, Maine, and all of the furniture, appliances and other personal property located in said building as of the date hereof.

## Exhibit B

Bill of Sale

## RELEASE BILL OF SALE

KNOW ALL MEN BY THESE PRESENTS, that **JENNI FARLEY, as Trustee of the Jenni Farley 2015 Revocable Living Trust,** a New Jersey trust (the "Seller"), in consideration for good and valuable consideration paid by **JENNIFER MATHEWS**, an individual resident of Maine, and a beneficiary of The Mathews Family Round Pond Revocable Trust - 2009 (the "Purchaser"), the receipt whereof is hereby acknowledged, does hereby transfer, convey, assign and quitclaim and release unto the Purchaser, their successors and assigns forever, all of Seller's right, title and interest, in and to the "Property," as that term is used in that certain Installment Sale Contract by and between Seller and Purchaser dated September 11, 2024.

The Personal Property hereby conveyed is sold **"AS IS, WHERE IS AND WITH ALL FAULTS."** Seller makes no representations or warranties, either express or implied, as to title to the Personal Property, or as to the fitness of the Personal Property for a particular purpose, merchantability, or as to any other matter.


IN WITNESS WHEREOF, Seller has caused this instrument to be executed and delivered this ___ day of _____ 20____.

**SELLER:**

WITNESS

THE JENNI FARLEY 2015 REVOCABLE LIVING TRUST


_____

By:_____

Name: Jenni Farley

Title: Trustee

## Exhibit C

The Mathews Family Round Pond Revocable Trust - 2009

EXHIBIT C

## The Mathews Family Round Pond Revocable Trust - 2009

**Roger W. Mathews, Jr. and Everett E. Mathews, Sr.** both of Cherryfield, Washington County, Maine (hereinafter as donor of the trust referred to as "Donor") and **Roger W. Mathews, Jr. and Everett E. Mathews, Sr.** (hereinafter as Trustees of the Trust, together with their successors in Trust referred to as the "Trustees") hereby declare that she holds the sum of Ten Dollars ($10.00) in trust, for the purposes and subject to the provisions hereinafter set forth.

The Trustees hereby acknowledge that they have received said property in trust and declare that they will hold, manage and invest the same, together with any other property which may hereafter be transferred to the trust by gift or otherwise from the Donor or anyone else and accepted by them as Trustees, and after paying or making provision for all expenses of the trust, including reasonable compensation for their services, will dispose of the trust property and the net income therefrom as hereinafter provided.

1.  Name of Trust. This trust shall be known as **The Mathews Family Round Pond Revocable Trust - 2009**

2.  Purpose. In the event the trust includes certain real property at Round Pond, Steuben, Maine, Trustees are specifically instructed that the principal objective and purpose of this trust is the preservation, retention and access to said real property for the benefit of Donor's children and their families. For purposes of this trust, Carrie Strout shall be treated as a child of Roger W. Mathews, Jr., and her heirs as his heirs.

    It is expected that there may be, from time to time, insufficient income from other trust sources to cover the expenses of the Round Pond, Steuben, Maine property or properties. Consequently, each beneficiary will be expected to contribute his or her share of the expenses as requested. In addition to the conventional Trustees powers listed below, the Trustees shall also calculate, allocate and collect reasonable assessments at those times and in those amounts deemed proper in the method described below. Those expenses shall include, but not be limited to, utilities, real property taxes, insurance, repairs and maintenance, and capital improvements. Trustees shall not be expected to incur any personal expenses in the discharge of their duties hereunder. Donor desires that each beneficiary, to the extent feasible, have an opportunity

to use the trust property. Trustee shall propose by August 1st of each year a proposed budget and allocation of said costs between the beneficiaries. Said notice shall also schedule a vote on said budget and allocation of use and of costs, which vote shall occur no earlier than fifteen (15) days after said notice is published. The vote may be done at a meeting of the beneficiaries, by telephone or by internet in any manner which reasonably gives each beneficiary an opportunity to vote. Each beneficiary shall be given a vote equal to his or her beneficial interest. A parent of a beneficiary under the age of eighteen may vote in behalf of said child. The budget and apportionment shall be approved by holders of at least fifty-one (51%) interest in the trust. The Trustees shall mail to the beneficiaries the apportionment of the expenses no later than November 1st of each year, which dues shall be immediately due and payable.

3. <u>Beneficiaries</u>. The beneficiaries of the trust shall be in the following persons in the following proportions:

| | |
|---|---|
| Everett Mathews, Jr. | 1/9th |
| Elaine Wood | 1/9th |
| Deborah Poirier | 1/9th |
| Christa Mathews | 1/9th |
| Roger W. Mathews, III | 1/9th |
| Carey Strout | 1/9th |
| Katherine Kershner | 1/9th |
| Roger W. Mathews, Jr. | 1/9th |
| Everett Mathews, Sr. | 1/9th |

4. <u>Rule Against Perpetuities</u>. This trust shall end, unless sooner terminated under any provisions hereof, twenty-one (21) years after the death of the last surviving issue of the beneficiaries now in existence, whereupon the trust shall be distributed free of all trust to the persons entitled to a share thereof, and in the proportions which they are entitled.

5. <u>Duties of the Trustees</u>. During the period of the trust the Trustees shall collect and pay taxes, contract for maintenance and upkeep of the property, schedule use of the property by the beneficiaries, adopt regulations for that use, and take all other actions necessary so that the property can be enjoyed by the beneficiaries. The Trustees shall also invest and hold solely monies to help pay for the expenses associated to the property.

A.   Each beneficiary shall be entitled to construct a "camp" at an area designated by the Trustee. The beneficiary shall be the sole owner of the camp and shall be responsible for all costs maintenance and taxes associated with the camp. The beneficiary shall be liable for any injuries or damages resulting from their use of their camp properties and shall hold the Trust and all other beneficiaries harmless therefrom. Any camp can be sold, but unless it is sold to a beneficiary of the trust, it must be removed within six months from the date of sale or sold to the trust for 75% of its appraised value minus any share of costs owed by the owners of the camp to the trust.

B.   Each beneficiary shall be entitled to the use of the boat landing near the "main camp" (being the camp formerly of Roger W. Mathews, Sr., now of Everett Mathews, Jr.)

6.   Transfer of Ownership. The beneficiaries shall be entitled during their lifetime or by will to transfer his or her beneficial ownership in the trust, provided, however, that said interest may only be transferred to a lineal descendant by blood or adoption. Transfer shall be completed upon signing and delivering a written transfer of ownership to the Trustees. Any attempt to transfer the property to a non-lineal descendant shall be null and void and shall not be of any force and effect.

7.   Apportionment of Costs. The Trustees shall apportion the costs for real estate taxes, legal fees, and such other costs as agreed upon by the beneficiaries of at least Fifty-One percent (51%) of the ownership of said Trust.

     Statements of apportionment of costs shall be sent no later than October 1st of each year and shall be immediately due and payable.

8.   Default. If after six months after presentment of appointment of costs any beneficiary shall fail to pay his or her share the Trustees shall send an additional statement. If payment is not paid within thirty (30) days of presentment of the mailing of the second statement, the Trustees shall charge interest on the outstanding balance at a rate of 1½% per month.

     If said beneficiary remains in default of payment one year after the initial notice of appointment of costs, the Trustees shall send by certified mail, restricted delivery, return receipt requested, a notice of termination of interest. In that notice of termination

of interest the Trustees shall notify the beneficiary of the outstanding balances due, including outstanding interest. The notice of termination shall contain the following paragraph prominently displayed:

WARNING: FAILURE TO PAY THE ABOVE BALANCE WITHIN THIRTY (30) DAYS OF RECEIPT OF THIS NOTICE SHALL CAUSE YOUR BENEFICIAL OWNERSHIP IN **THE MATHEWS FAMILY ROUND POND REVOCABLE TRUST - 2009** TO BE TERMINATED.

If the beneficiary fails to make payment within the thirty day period provided in the notice of termination, then the Trustees shall terminate the interest on the records of the trust, which interest will be divided among the other beneficiaries of the trust in accordance with the beneficiaries' ownership.

If notice of termination cannot be mailed as afore stated because the beneficiaries address is unknown after due diligence on the part of the Trustees, then the Trustees are authorized to publish said notice of termination in a paper of general circulation in Washington County for two successive weeks, whereupon said notice shall be deemed to have been delivered, and shall authorize the termination of the interest of the beneficiary as aforesaid.

9. Spendthrift Provisions. The interest of any beneficiary in this trust shall not be subject to assignment, alienation, pledge, attachment, or claims of creditors.

10. Accounting by Trustees . The Trustees shall render to the beneficiaries of this trust a statement of account of receipts and disbursements at least annually. The Trustees shall not be required to make any reports to any court at any time for any purpose.

11. Resignation of Trustee. Any Trustee may resign from this trust at any time, by giving sixty (60) days written notice prior to such resignation, by ordinary mail to the beneficiaries then entitled thereto.

12. Co-Trustee and Successor Trustee. If any of the original Trustees named herein shall die or cease to act in his or her capacity then the remaining Trustee shall have the right to appoint a Trustee to serve jointly with him. If any vacancy of the Trustee occurs those holding a majority of interest in the trust shall have the right to appoint a successor Trustee, but they cannot reach such agreement

as to a particular Trustee or Trustees, or they refuse to name a successor Trustees or Trustees, then the Trustee or Trustees shall be appointed by a court of competent jurisdiction upon the petition of any persons interested in the trust.

13. <u>Compensation of Trustees</u>. A Trustees shall serve without compensation, except that the Trustees shall be reimbursed for reasonable expenses incurred in the administration of this trust, including but not limited to all travel costs associated with his or her duties.

14. <u>Bond of Trustees</u>. Any power, right or discretion granted to the Trustees may be exercised by them without posting any bond, and without an order form or approval of any court and without any notice or consent of anyone.

15. <u>Minor Beneficiaries</u>. If any beneficiary of this trust is under 18 years of age, then the parent(s) or legal guardian of said minor shall receive all notices and shall be responsible for all obligations of said ownership and shall enjoy any benefits of the trust in the name of the beneficiary. Failure of said parent(s) or legal guardian to make payment as aforesaid shall cause a termination of the minor child's beneficial ownership, not withstanding that said beneficiary is a minor.

16. <u>Revocability</u>. The terms and conditions of this Trust is revocable and may be altered and amended and/or terminated upon the written consent of the holders of Ninety(90%) percent of the beneficial ownership of the trust. Donors retain the right to alter or amend or terminate this trust. At the death of the first Donor the surviving Donor shall have no rights to revoke or amend this Trust.

17. <u>Termination</u>. Unless terminated sooner, this Trust shall terminate upon the death of the last of the children of the beneficiaries named above. Upon the death of the said child, the Trustees shall have the property appraised by a licensed appraiser. The Trustees shall then offer the property for sale to the beneficiaries at its appraised price. If more than one beneficiary seeks to purchase the entire interest then the Trustees shall determine which beneficiary or beneficiaries shall be entitled to purchase said property by any method of chance. If no beneficiary wishes to purchase the property, the property shall be sold and the proceeds after taxes divided to the beneficiaries in proportion to their ownership.

18. <u>Powers</u>. In extension and not in limitation of any common law or statutory power, the Trustees shall have and may exercise at any time or times, without license of court or notice to or consent of anyone, all of the powers granted to Trustees pursuant to 18-B §§814-816, including, but not limited to the following powers, authorities and discretions, which shall continue after the termination of the trust for the purpose of distributing the trust estate:

   a. To retain, purchase and invest in any property, regardless of its character, its quality and the principal of diversification or any other principle applicable to investments of fiduciaries, including without limitation any and all property received by them by gift or otherwise from the Donor or anyone else and any shares, participations, or other interests in a common trust fund or a mutual fund; to hold unproductive property, including without limitation un-invested cash; to make contracts and covenants, to sell, exchange,

   b. To lease, mortgage, pledge or grant easements over or options with respect to any property, to determine the terms and manner of doing so and to execute and deliver all appropriate instruments connected therewith, whether or not the effect thereof extends beyond the termination of the trust; to maintain, repair, improve, develop, subdivide, partition, change or alter any property; to impose, amend or remove restrictions on the transfer of any property; to employ agents, custodians, investment counsel and attorneys, and to pay them reasonable compensation in addition to that of the Trustees; to pay, resist, compromise or submit to arbitration any claim or matter in dispute; to vote, give proxies and exercise other rights of a holder of securities; to open bank accounts with the right n any one (1) or more of them to make withdrawals therefrom; to hold property in the name of a nominee or in any other form not indicating any fiduciary relationship; to make distributions in cash or in kind or in both and conclusively determine all values; to keep the whole or any part of the trust property in any jurisdiction; to make payments of income or principal directly to the Donor, regardless of her legal status, or to her guardian, or to apply the same for her benefit, any such payment or application to be a complete discharge to the Trustees to the extent of the amount so paid or applied without any receipt.

19. Documentation. With respect to the terms of this instrument, the existence and terms of any amendments hereto, the termination of the trust hereunder and the identity, decision and actions of the Donor and the Trustees, all persons may rely conclusively (I) on the facts stated in a certificate signed by a Trustee, and (ii) with respect to any real estate held by the Trustees, on the records of the appropriate office in which instruments affecting said real estate are recorded.

20. Terms. The validity, interpretation, construction and administration of the trust hereby created shall in all respects be governed by the laws of Maine. As used herein, the term "Trustees" means, wherever the context so permits, the Trustees for the time being, whether original or successor, whether or not there is more than one Trustee; the term "guardian" means a legally appointed guardian or conservator; and the term "property" means any property, whether real, personal or mixed. Where the context so permits, each of the masculine, feminine and neuter genders shall be deemed to denote the other two genders, the singular to denote the plural and the plural to denote the singular.

Executed this 2nd day of September, 2009.

_____
**Roger W. Mathews, Jr.**
**Donor and Trustee**

_____
**Everett E. Mathews, Sr.**
**Donor and Trustee**

STATE OF MAINE
WASHINGTON, ss.

September 2, 2009

Then personally appeared the above-named **Roger W. Mathews, Jr.**, and acknowledged the foregoing instrument to be their free act and deed.

Before me,

_____
Notary Public
Jeffrey Lovit