UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JENNI L. FARLEY, in her capacity as Trustee of the Jenni Farley 2015 Revocable Living Trust,<br><br>            Plaintiff<br><br>v.<br><br>ROGER W. MATHEWS, JR., individually and in his capacity as Trustee of The Mathews Family Round Pond Revocable Trust – 2009,<br><br>            Defendant | 1:24-cv-00358-JCN |

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

This action involves a dispute regarding an attempted transfer of a camp located in Steuben, Maine. Plaintiff, the current owner of the camp, attempted to convey the camp through an Installment Sale Agreement ("the Agreement"). The contemplated transaction was limited to the camp and did not include the sale of the real property upon which the camp is situated. The real property is owned by The Mathews Family Round Pond Revocable Trust – 2009 ("the Mathews Trust"). Defendant, the trustee of the Mathews Trust, opposed the transaction. He maintained that the transfer of the camp would violate the terms of the Mathews Trust.[1]

---

[1] While a trust is a legal arrangement as distinguished from the written trust document that creates or memorializes the arrangement, for simplicity, the Court will refer to the arrangement and the written trust document as the Mathews Trust.

Plaintiff alleges Defendant tortiously interfered with the Agreement and breached his fiduciary duty to her as a beneficiary of the Mathews Trust. Defendant seeks summary judgment on both counts of the complaint. Following a review of the record and after consideration of the parties' arguments, the Court denies Defendant's motion for summary judgment.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "After the moving party has presented evidence in support of its motion for summary judgment, 'the burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor.'" *Woodward v. Emulex Corp.*, 714 F.3d 632, 637 (1st Cir. 2013) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 158 (1st Cir. 1998)).

A court reviews the factual record in the light most favorable to the nonmoving party, drawing reasonable inferences in the non-movant's favor. *Perry v. Roy*, 782 F.3d 73, 77 (1st Cir. 2015). If a court's review of the record reveals evidence sufficient to support findings in favor of the nonmoving party on one or more of the nonmovant's claims, a trial-worthy controversy exists, and summary judgment must be denied as to any supported claim. *Id.* ("The district court's role is limited to assessing whether there exists evidence such that a reasonable jury could return a verdict for the nonmoving party." (internal quotation marks omitted)).

## FACTUAL BACKGROUND

The Mathews Trust owns real property in Steuben, Maine. (Def's Statement of Material Facts, hereinafter "DSMF" ¶ 1, ECF No. 20.) At all relevant times, Defendant has been the trustee of the Mathews Trust. (*Id.* ¶ 2.) Defendant is also one of two donors of the Mathews Trust, the other being Everett E. Mathews, Sr. (Mathews Trust, Ex. A to Pl's Response to Requests for Admissions, ECF No. 20-4.) The principal purpose of the Mathews Trust is to preserve, retain, and provide access to the real estate in Steuben for the benefit of the donors' children and their families. (*Id.* ¶ 2.) Trustee duties include scheduling use of the Steuben property by beneficiaries, adopting regulations for that use, and taking "all other actions necessary so that the property can be enjoyed by the beneficiaries." (*Id.* ¶ 5.)

The Mathews Trust entitles each beneficiary to build a camp on the real estate in Steuben, but the underlying real estate continues to be owned by the Mathews Trust. (DSMF ¶ 3.) Regarding ownership and sale of camps situated on the real estate, the Mathews Trust provides:

> The beneficiary shall be the sole owner of the camp and shall be responsible for all costs[,] maintenance[,] and taxes associated with the camp. The beneficiary shall be liable for any injuries or damages resulting from their use of their camp properties and shall hold the Trust and all other beneficiaries harmless therefrom. Any camp can be sold, but unless it is sold to a beneficiary of the trust, it must be removed within six months from the date of sale or sold to the trust for 75% of its appraised value minus any share of costs owed by the owners of the camp to the trust.

(*Id.* ¶ 5.) As to the transfer of ownership in the trust, the Mathews Trust states:

> The beneficiaries shall be entitled during their lifetime or by will to transfer his or her beneficial ownership in the trust, provided, however, that said

> interest may only be transferred to a lineal descendant by blood or adoption. Transfer shall be completed upon signing and delivering a written transfer of ownership to the Trustees. Any attempt to transfer the property to a non-lineal descendant shall be null and void and shall not be of any force and effect.

(*Id.* ¶ 4.) If any beneficiary of the trust is younger than 18, the parent or legal guardian of that minor beneficiary "shall be responsible for all obligations of said ownership and shall enjoy any benefits of the trust in the name of the beneficiary." (Matthews Trust ¶ 15.)

The beneficiaries designated by the Mathews Trust include Roger W. Mathews, III, to whom Plaintiff was previously married. (DSMF ¶¶ 6, 7.) During their marriage, they had two children together. (Compl. ¶ 5, ECF No. 1.) They also built a camp on the real estate in Steuben, which camp is the subject of this action. (DSMF ¶ 8.) In 2019, Plaintiff and Roger W. Mathews, III, were divorced. (*Id.* ¶ 7.) As part of the divorce judgment, Roger W. Matthews, III, transferred his interest in the camp in Steuben to his two minor children in an arrangement whereby their interests would be held by the Jenni Farley 2015 Revocable Living Trust. (*Id.* ¶ 9.)

At some point, Jennifer Mathews and her husband, Joshua Goston, contacted Plaintiff and expressed an interest in buying the camp. (Pl's Statement of Additional Facts, hereinafter "PSAF" ¶ 24, ECF No. 22.) Jennifer Mathews is the daughter of Everett Mathews, Jr., who is a beneficiary of the Mathews Trust. (DSMF ¶¶ 11-12.) Jennifer Mathews is not currently a beneficiary of the Mathews Trust. (*Id.* ¶ 13.) Everett Mathews, Jr., has not, to date, transferred his beneficial interest in the Mathews Trust to Jennifer Mathews. (*Id.* ¶ 15.) After looking at the camp in August 2024, Jennifer Mathews and Joshua Goston decided they wanted to buy it. (PSAF ¶ 27.)

4

On September 10, 2024, Plaintiff entered into the Agreement with Jennifer Mathews, whereby Plaintiff agreed to sell the camp—but not the underlying real estate—to Jennifer Mathews. (DSMF ¶ 10.) The Agreement contemplated that Plaintiff would retain title to the camp until the purchase price was paid in full, at which time Plaintiff was to deliver a bill of sale to Jennifer Mathews. (Agreement, Exh. 1 to Dep. of Jennifer Mathews ¶¶ 1, 5, ECF No. 20-6.)

Jennifer Mathews agreed to pay a total purchase price of $500,000 plus interest and other charges, to be paid in installments, followed by a balloon payment at closing. (*Id.* ¶¶ 2-3.) The closing date was defined as September 1, 2029, but could be extended by up to three years, to September 1, 2032. (*Id.* ¶¶ 2(a), 4.) Under the Agreement, Jennifer Mathews was granted the right to occupy and possess the camp, so long as she performed her obligations under the Agreement. (*Id.* ¶ 6.) During the term of the Agreement, and until delivery of the bill of sale, Jennifer Mathews was, among other things, required to pay all real estate taxes, maintenance, and utility expenses for the camp. (*Id.* ¶ 7.) Until the delivery of the bill of sale, Jennifer Mathews was also prohibited from removing or altering "the design or structural character of the Property" without Plaintiff's consent. (*Id.*)

In the Agreement, Jennifer Mathews represented that she is a beneficiary of the Mathews Trust and "presently has the right to own a 'camp'" on the real estate in Steuben in accordance with the Mathews Trust. (DSMF ¶ 16.) The Agreement did not explicitly require Jennifer Mathews to remove the camp from the real estate in Steuben within six months of the date of sale, as required by the Mathews Trust for any sale of a camp to a non-beneficiary. (*Id.* ¶ 17.) The Agreement provided that the sale would be "subject to

5

the restrictions imposed by the Mathews Trust," (Agreement at 1), and the Mathews Trust was attached as an exhibit to the Agreement.

Joshua Goston contacted Defendant to inform him of the Agreement. (DSMF ¶ 20.) Defendant was not pleased with this news; he informed Ms. Mathews and Mr. Goston that the proposed sale would violate the terms of the Mathews Trust. (DSMF ¶ 20; PSAF ¶ 30.) When Jennifer Mathews and Joshua Goston later contacted Defendant, Defendant told them he was not going to "let this go" and that he "was willing to fight this" in court if necessary. (PSAF ¶¶ 34-35.) Jennifer Mathews described the week during which these contacts were taking place as the most stressful week of her life. (PSAF ¶ 37.) When Jennifer Mathews's mother went to look at the property before Jennifer's contemplated move-in date, she found that Defendant had barricaded the entrance to the property with a truck, a tractor, and felled trees. (PSAF ¶ 38.) Jennifer Mathews found the barricade aggressive and intimidating, and began to re-think the Agreement. (PSAF ¶ 39.) On September 13, 2024, Joshua Goston sent a text message to Plaintiff asking her to let him and Jennifer Mathews out of the Agreement, and to return their deposit. (DSMF ¶ 21.) The camp is still owned by Plaintiff. (*Id.* ¶ 22.)

## DISCUSSION

### A. Tortious Interference with Contract

Defendant seeks summary judgment on Plaintiff's tortious interference with contract claim, asserting that she is unable to make a showing sufficient to establish two of

6

the three elements essential to that claim. Under Maine law,[2] tortious interference with contract requires proof: "(1) that a valid contract . . . existed; (2) that the defendant interfered with that contract . . . through fraud or intimidation; and (3) that such interference proximately caused damages." *Rutland v. Mullen*, 798 A.2d 1104, 1110 (Me. 2002) (citations omitted). Defendant contends that the undisputed facts establish that the Agreement was not valid. He further argues that Plaintiff cannot show that she suffered any damages.

The Maine Supreme Judicial Court has not had occasion to comment extensively on the first or the third element of tortious interference with contract. In recent years, however, the Law Court has referenced the Restatement when examining certain aspects of this tort. *See, e.g., Meridian Med. Sys., LLC v. Epix Therapeutics, Inc.*, 250 A.3d 122, 135 (Me. 2021). In the absence of definitive Maine law regarding the valid contract and damages elements of tortious interference with contract, the Court looks to secondary sources, including the Restatement, and the laws of other states that employ similar formulations of the tort. *See Aubee v. Selene Fin. LP*, 56 4th 1, 4 (1st Cir. 2022) ("Applying state law involves 'interpreting and applying rules of substantive law enunciated by the state's highest judicial authority, or, on questions to which that tribunal has not responded, making

---

[2] In a diversity action, the Court applies state substantive law. *Quality Cleaning Prods. R.C., Inc. v. SCA Tissue N. Am., LLC*, 794 F.3d 200, 204 (1st Cir. 2015). The parties do not appear to dispute that Maine substantive law applies to this dispute. Because the Mathews Trust and the Agreement both state that Maine law governs their construction, and because the attempted conveyance involves property located in Maine, the Court applies Maine substantive law.

an informed prophecy of what the court would do in that same situation.'") (quoting *Blinzler v. Marriott Int'l, Inc.*, 81 F.3d 1148, 1151 (1st Cir. 1996)).

### 1. Validity of the Agreement

Defendant asserts two defects in the Agreement: (1) Jennifer Mathews's representation that she was a beneficiary of the Mathews Trust, when she was not; and (2) the failure of the Agreement to expressly require Jennifer Mathews to remove the camp from the real estate in Steuben, or sell it to the Mathews Trust, within six months of the date of sale. The facts material to the alleged defects are undisputed. Whether the alleged defects rendered the Agreement invalid, for tortious interference purposes, presents a question of law properly decided on summary judgment. *See CRST Expedited, Inc. v. TransAm Trucking, Inc.*, 960 F.3d 499, 506-08 (8th Cir. 2020) (affirming trial court's determination on summary judgment, and concluding as a matter of law, that contract was valid for purposes of intentional interference claim).

The interest protected by an action for tortious interference with contract is "freedom from interference with the plaintiff's legitimate contractual expectations." *See* Restatement (Third) of Torts § 17 cmt. k (2020). "A party to an invalid contract generally has no such expectations." *Id.* If, however, the contract is valid in substance, and "merely contains a defect that one party could use to escape liability if the issue were litigated, the right to complain about the defect belongs to that party, not to an outsider to the contract who seeks to interfere with its performance." *Id.* For purposes of tortious interference, whether a defect renders a contract invalid turns on whether the defect leaves the contract entirely void, or whether the defect might instead make the agreement unenforceable by

one of the parties to the contract. *See Silicon Int'l Ore, LLC v. Monsanto Co.*, 314 P.3d 593, 606 (Ida. 2013) (citing *Barlow v. Int'l Harvester Co.*, 522 P.2d 1102, 1114 & n.2 (Ida. 1974)—which has since been abrogated in part on other grounds—for the proposition that "a claim for tortious interference with a contract is available when a contract is voidable or unenforceable but is not available when the contract is void ab initio").

Here, neither of the defects alleged by Defendant bars Plaintiff's tortious interference claim as a matter of law. Jennifer Mathews's representation that she was a beneficiary of the Mathews Trust does not entitle Defendant to summary judgment. A misrepresentation "going to the very character of the proposed contract itself" can, in certain circumstances, prevent the formation of an agreement, rendering the contract entirely void. *See* E. Allan Farnsworth, Contracts § 4.10 (4th ed. 2004). Such a misrepresentation, sufficient to prevent contract formation, is known as fraud in the execution. *See* Restatement (Second) of Contracts § 163 cmt. a (1981) (providing that there is no manifestation of assent and no contract at all when a misrepresentation relates to "the character or essential terms" of the contemplated transaction and the other party neither knows nor has a reasonable opportunity to know of the character or essential terms); *see also In re Estate of Whitlock*, 576 A.2d 748, 750 (Me. 1992) (citing the Restatement (Second) of Contracts § 163 cmt. b in evaluating the validity of an agreement allegedly induced by material misrepresentation). "Only rarely . . . is a misrepresentation seen as going to the very nature of the contract itself." Farnsworth, Contracts § 4.10. "Even the identity of the other party is not usually regarded as sufficiently central" to qualify as fraud in the execution. *See id.* "Examples of fraud in the execution" that render an agreement

9

void "include a party's substitution of one type of document for another, and the substitution of a new document of the same kind as the one previously read and agreed to by the other party, but containing materially different terms." *Del Turco v. Speedwell Design*, 623 F. Supp. 2d 319, 336 (E.D.N.Y. 2009).

Jennifer Mathews's representation concerning her beneficiary status did not go to the character of the contract and, therefore, did not amount to fraud in the execution sufficient to invalidate the Agreement for purposes of a tortious interference with contract claim. Jennifer Mathews's representation that she was a beneficiary might qualify as a material, false representation—and therefore a default—under the terms of the Agreement, permitting Plaintiff to exercise prescribed remedies, including termination of the agreement. The representation regarding beneficiary status could also conceivably have provided grounds for Plaintiff to avoid the Agreement if she were able to prove that the misrepresentation was material, that the misrepresentation induced her to sign the Agreement, and that she was justified in relying upon the misrepresentation. *See Estate of Whitlock*, 615 A.2d at 750 (reciting the elements of misrepresentation in the inducement and referencing the Restatement (Second) of Contracts § 164(1)). In this case, there is no such undisputed proof, and even if there were, the contract would be possibly voidable by Plaintiff. That possibility does not render the Agreement void, particularly as to Defendant.

Moreover, as Plaintiff notes, Jennifer Mathews could have become a beneficiary of the Mathews Trust prior to the closing date. While the Agreement might have been voidable by Plaintiff because of the representation concerning Jennifer Mathews's status as a beneficiary, the facts could have "come into accord" with that representation, curing

10

the defect that might have rendered the contract voidable by Plaintiff.  *See* Restatement (Second) of Contracts § 165 ("If a contract is voidable because of a misrepresentation and, before notice of an intention to avoid the contract, the facts come into accord with the assertion, the contract is no longer voidable unless the recipient has been harmed by relying on the misrepresentation."); *cf. Thompson v. Skowhegan Sav. Bank*, 433 A.2d 434, 437 (Me. 1981) ("As a general rule, the vendee, under an executory contract for the sale of land, cannot complain of defects in the vendor's title before the time set for delivery of the deed.").

Finally, if Jennifer Mathews had not become a beneficiary prior to the closing date, she could still have complied with the restrictions imposed by the Mathews Trust by removing the camp within six months of the date of sale – i.e., the closing date.  If neither of those conditions materialized, the transfer might have been subject to challenge by the trustee of the Mathews Trust at that point.  That potential challenge, however, does not entitle Defendant to summary judgment on Plaintiff's tortious interference claim.

**2.    Damages**

Defendant also contends that Plaintiff cannot establish the damages element of her tortious interference with contract claim because she still owns the camp.  Defendant's argument is unpersuasive.  In tort cases, economic loss damages, derived from principles of contract law, include damages for lost profits.  1 Maine Tort Law § 25.02 (Lexis 2025); *accord Doran-Maine, Inc. v. Am. Eng'g & Testing, Inc.*, 608 F. Supp. 609, 616 (D. Me. 1985) (recognizing, in a case governed by Massachusetts law, that damages available in business tort cases include the recovery of lost profits); Restatement (Second) of Torts §

774A (1979) (providing that damages for tortious interference with contract include the pecuniary loss of the benefits of the contract). Had the parties to the Agreement performed under the terms of the Agreement, Plaintiff would retain title to the camp, but she also would have received multiple installment payments and would have been relieved of the obligation to pay taxes and maintain the camp during the term of the Agreement. The Agreement contemplated an economic benefit to Plaintiff even while she owned the camp. As such, Plaintiff's continued ownership of the camp does not, as a matter of law, preclude her claim for tortious interference with contract.

B.  **Breach of Fiduciary Duty**

"Under Maine common law, the elements of a breach of fiduciary duty are (1) a fiduciary relationship between the plaintiff and another person, (2) a breach of the other person's fiduciary duty toward the plaintiff, and (3) damages incurred by the plaintiff proximately caused by the breach." *Meridian Med. Sys., LLC*, 250 A.3d at 127. Under the Maine Uniform Trust Code, which applies to express trusts, like the Mathews Trust, 18-B M.R.S.A. § 102, a trustee has certain statutory duties, including the duty to "administer the trust in good faith, in accordance with its terms and purposes and the interests of the beneficiaries[.]" *Id.* § 801. A trustee is additionally obliged to "take reasonable steps to take control of and protect the trust property." *Id.* § 809. "Notwithstanding the breadth of discretion granted to a trustee in the terms of the trust," a trustee must also "exercise a discretionary power in good faith and in accordance with the terms and purposes of the trust." *Id.* § 814(1).

12

A "claim for breach of fiduciary duty is a tort claim." *Perry v. Dean*, 156 A.3d 742, 745 n.5 (Me. 2017). Where the existence of a fiduciary relationship and a breach of the duty created by that relationship are established, a plaintiff may recover "compensatory damages." *See Brown v. Compass Harbor Village Condo. Ass'n*, 229 A.3d 158, 164 (Me. 2020) (citing the Restatement (Second) of Torts § 874 (1979)). Compensatory damages are designed to place the plaintiff "in a position substantially equivalent in a pecuniary way to that which he would have occupied had no tort been committed." Restatement (Second) of Torts § 903 cmt. (a).

Defendant asserts that the undisputed facts establish that he did not breach a fiduciary duty owed to Plaintiff by seeking to prevent the sale of the camp to Jennifer Mathews. He contends that the Agreement violated the terms of the Mathews Trust, and that he would have violated his fiduciary obligations as trustee if he had not opposed the sale. He further contends that even if he breached some fiduciary duty, Plaintiff has suffered no damage, as she continues to own the camp.

Defendant's arguments fail largely for the reasons discussed above. First, Defendant has not established that as a matter of law the Agreement is void or violates the Mathews Trust. As the Court previously observed, although Jennifer Mathews was not a beneficiary of the Mathews Trust when the Agreement was executed, she could have become a beneficiary prior to the closing date, and if she had not, she could have removed the camp from the real estate or sold it back to the Mathews Trust under the terms of the trust. Defendant's contention that summary judgment is warranted because his fiduciary duty required him to act as he did, therefore, is unavailing. In addition, even if the terms

13

of the Agreement might be in some tension with the terms of the Mathews Trust and if Defendant's obligation required some action, a reasonable factfinder could conclude that Defendant had other options to satisfy any fiduciary obligation in a way that might have been less intimidating to Jennifer Mathews and not resulted in the termination of the Agreement. In other words, a factfinder could reasonably conclude that Defendant's fiduciary obligation did not require him to barricade the entrance to the property with a truck, a tractor, and felled trees, which action, Plaintiff maintains, caused the buyers to seek to withdraw from the Agreement.

Finally, Plaintiff's continued ownership of the camp does not, by itself, establish that she could not prove damages arising out of the alleged breach of fiduciary duty. As explained above, if the Agreement had been executed, although Plaintiff would still have title to the camp, she would also have received installment payments and other pecuniary benefits.

## CONCLUSION

Following a review of the record and after consideration of the parties' arguments, as explained above, the Court concludes that Defendant has not established that he is entitled to judgment as a matter of law on Plaintiff's claims. The Court, therefore, denies Defendant's motion for summary judgment.

/s/ John C. Nivison  
U.S. Magistrate Judge

Dated this 18th day of December, 2025.